AMERICAN BUILDING & LOAN ASSOCIATION V. NAPOLEON A. RAINBOLT.

FILED MAY 19, 1896. No. 6476.

1. **Contracts: TIME TO RESCIND.** The right to rescind a contract on the ground of fraud must be promptly exercised upon the discovery of the ground therefor. The continued use or employment of property will, in such case, be construed as an election to affirm the contract under which it was received.

2. **Building and Loan Associations: STOCK: FRAUD: WITHDRAWAL OF STOCKHOLDERS.** A stockholder who has for three years acted as a director of a corporation, taking an active part in its management, with notice of its business methods and financial condition, cannot thereafter, in an action against such corporation, recover the money originally paid for his stock on the ground that his subscription therefor was procured by means of the fraudulent representation of the defendant's agents.

3. **Principal and Agent: NOTICE: RECOVERY FOR MONEY PAID FOR STOCK.** Nor can he in such case recover as assignee of like claims of other stockholders represented by him as agent, and whose interest as such he was bound to protect, since, by reason of their relations towards him, such stockholders are chargeable with the knowledge possessed by him respecting the affairs of the corporation.

4. **Pleading.** Facts which merely disprove the allegations of the adverse party do not necessarily constitute new matter within the meaning of the Code, and are, as a rule, admissible in evidence under a general denial.

5. **Contracts: EVIDENCE OF BREACH: BUILDING AND LOAN ASSOCIATIONS.** Evidence examined, and *held* not to prove the breach by the defendant, a foreign building and loan association, of an alleged agreement to maintain at the plaintiff's home a local board of directors.

6. ———: **BREACH: RESCISSION.** Not every breach of a contract by one party thereto will authorize the other to treat it as rescinded. The failure to perform an independent stipulation collateral to the main consideration, not amounting to a condition precedent, and not such as to prevent the performance by the party so in default, of the principal undertaking, although attended by some loss or inconvenience to the other party, does not absolve the latter from liability, or authorize him to treat the contract as abandoned.

7. **Corporations**: MISMANAGEMENT: WITHDRAWAL OF STOCKHOLDERS. The mere mismanagement of the affairs of a corporation by its officers or agents does not warrant the withdrawal therefrom of stockholders or the repudiation of the obligations assumed by them as such.     •

8. **Constitutional Law**: VIOLATION OF CONTRACTS. The act of 1891 relating to building and loan associations (Compiled Statutes, secs. 148a-148r, ch. 16) provides that it shall not be lawful for any foreign building and loan association to transact business in this state without first having filed with the auditor of public accounts a copy of the act under which it was organized, together with its charter or articles of incorporation, a statement under oath showing its resources and liabilities, also the number and cash value of its shares, and appoint an attorney in each county in which it may transact or solicit business, on whom service of process can be made, and with authority to acknowledge service in its behalf; and that any person or corporation doing business in this state as agent for any such association, which shall not have complied with the provisions of said act, shall be deemed guilty of a misdemeanor, and shall, upon conviction thereof, be fined, etc. *Held*, (1) That the primary object of said statute is to bring a designated class of foreign corporations within the jurisdiction of the courts of this state in order to protect persons dealing with them from fraud and imposition; (2) assuming that the purpose of said act was to declare illegal contracts of non-complying building and loan associations, it is, as to agreements existing at the time of its enactment, a clear invasion of constitutional rights, as impairing contract obligations.

ERROR from the district court of Madison county. Tried below before JACKSON, J.

*Barnes & Tyler* and *C. M. Cooley*, for plaintiff in error.

*John S. Robinson* and *Powers & Hays, contra.*

POST, C. J.

This was an action in the district court for Madison county by the defendant in error, Rainbolt, to recover money paid by himself and his assignors, Mary R. Rainbolt, James H. Brown, John F. Newhall, and S. H. Overholser, as subscribers for the capital stock of the plaintiff in error, the American Building & Loan Association of Minneapolis, in the state of Minnesota, hereafter called

the "association." The theory upon which the cause was prosecuted to judgment in the district court is that the contracts of subscription had been rescinded by the several subscribers named, on account of the fraud of the defendant therein, and on account of the violation by the latter of the terms and conditions of the agreement under and by virtue of which the money sued for was paid. The allegations of the petition, which is exceedingly voluminous, are, by counsel for the association, properly grouped under three heads: (1.) Fraudulent representations as inducements to the subscription for said capital stock. (2.) The violation of an agreement by said association to the effect that all money paid by subscribers in the city of Norfolk and certain contiguous territory, after the payment of necessary expenses, should be credited to a fund to be known as the "loan fund," the proceeds of which were to be applied in payment of the stock of such subscribers. (3.) The failure of the defendant below to comply with the provisions of the act relating to building and loan associations, which took effect April 4, 1891. (Laws, 1891, ch. 14.) The stock to which reference is made was, according to the petition, subscribed for in the months of July, October, and November, 1888, and payments thereon made at the rate of sixty cents per month for each share, of the par value of $100, up to and including the month of April, 1891. The charge of fraud sufficiently appears from the following quotation from the petition:

"That at the time of said subscription for stock by said parties the defendant proposed to use said moneys so paid in by said parties in payment for said stock in making loans to holders of stock in the defendant, secured by mortgage upon real estate held by them, upon applications to be made and to be submitted to a local board of the defendant, to be constituted of stockholders in the defendant residing in the city of Norfolk and said county of Madison, and to use all the money so paid for said stock except sufficient to carry on the expenses, for the

creation of a loan fund to be used in making loans, upon real estate, to the stockholders of the defendant, at the rate of interest of six per cent per annum, which loans made to any of the said stockholders in said counties of Madison and Pierce were to be approved by the local board of the defendant, consisting of stockholders residing in the city of Norfolk, Nebraska, and agreed to create such local board at Norfolk, Nebraska, which should have a treasurer, to whom subscribers for stock could pay their assessments thereon, and subsequently and soon after said subscriptions of stock had been made, did create such local board at Norfolk, aforesaid, and a local treasurer or collector, to whom the assessments or payments upon said stock could be made by said subscribers thereto and to whom said payments were made, which agreement was published in a circular by the defendant, which it distributed to said parties, as well as many others, and which said circulars contain the statement as an inducement, and which was an inducement to said parties to subscribe for said stock, that the affairs and management of the defendant were and should be supervised by an advisory board, consisting of a large number of well-known and eminent citizens of the states of Minnesota and Iowa, among which was the name of an ex-governor of the state of Iowa and the lieutenant governor of the state of Minnesota, and others of equal prominence in the country; that said representations so made by the defendant were false and fraudulent and known by it so to be at the time the same were made, and the said parties so subscribed for said stock as aforesaid believing the same to be true, and were induced thereby to make said subscriptions for said stock; that the defendant agreed as part of said contract of subscription that all of said money paid upon said stock, except enough to pay the expenses of the defendant, should be placed in a fund to be called the loan fund, and that the proceeds thereof should be applied in payment of said stock. It was also agreed by the defendant in said contracts of

subscription with said parties that any moneys remaining in the expense fund after paying the salaries of the officers, as fixed by the board of directors, and the other expenses of the association, the surplus so remaining shall be turned into the loan funds as profits.

"The plaintiff further says that said representations in regard to the advisory board were false, fraudulent, and untrue, and known by defendant so to be at the time the same were made and when said subscriptions to said stock were made; that for some time after said subscriptions of stock were made, and until August, 1891, the defendant had a local board in the city of Norfolk, with its treasurer, to whom said payments or assessments upon its stock were made by said parties, and in the month of August, 1891, the defendant abrogated the same and withdrew the power or authority from said local board and its treasurer, and demanded that said parties should make future payments upon their stock at the office of the defendant in the city of Minneapolis and state of Minnesota."

It will be observed from a careful reading of the foregoing excerpt that the only false assertions charged with respect to existing matters are those which relate to the so-called advisory board, and which are expressly controverted by the answer. There is, apparently, much force in the argument that the law raises no presumption of damage on account of the non-existence of such a board, and that the allegations of the petition, so far as they relate to that subject, are wholly immaterial. The question does not, however, call for discussion in this connection, since there is upon the issue presented an entire failure of proof. A copy of the document mentioned in the petition is attached to the bill of exceptions and referred to by witnesses and counsel as the "blue circular," in which, after a statement of the authorized capital and names of officers and directors of the defendant association, appears the following:

"ADVISORY BOARD.

"Hon. John H. Gear, Ex-Governor, Iowa; Hon. A. E. Ricehient, Governor, Minn.; Hon. John De Laittre, Minneapolis, Minn.; Hon. E. W. Trask, Minneapolis, Minn."

Said circular contains a statement in detail of the purpose of the defendant association, a summary of its business methods, and the advantages claimed for it as a means of investment, but containing no reference to an advisory board, except as shown above. Its articles of incorporation provide for a president, secretary, treasurer, and board of six directors, and declare that the government of the association and management of its affairs shall be vested in said officers and directors. In the by-laws of the association, which were introduced in evidence by the plaintiff below, we find this provision: "Advisory boards may be appointed by the board of directors to such an extent and at such times as it may deem best. They shall advise with the board of directors upon important topics whenever called upon to do so, and shall furnish said directors with information relating to the matters of the association in their particular localities as they may from time to time require."

. The plaintiff below, according to the testimony given by him in his own behalf, visited Minneapolis about July 30, 1888, for the purpose of attending the stockholders' annual meeting, at which time he was chosen as a director of the association, and in which capacity he continued to serve until the month of July, 1891, at the same time acting as agent for the other stockholders in Norfolk and vicinity in their relations to the association. He testified further that he learned from the president, Mr. Rundell, the day succeeding the day of his election as a director, that there was in fact no advisory board, although it was customary to print in the advertising literature, as members of such board, the names of influential persons, in order to assist agents in securing business for the association. The record, however, fails to dis-

close any substantial change in the management of the affairs of the association during the defendant in error's term of office as a director. There was, according to his express admission, during said period, no action taken by the directors for the appointment of an advisory board; and it is certain that no steps were taken by him, either in his own behalf or for those whom he represented, toward a rescission of the contracts under which the stock in question was issued until after the annual meeting in July, 1891, with which, for reasons not disclosed, his official relation to the association terminated. It will thus be seen that there is not a mere failure of proof upon the issue, of rescission within a reasonable time, but that the plaintiff by his conduct deliberately waived whatever right, if any existed in his favor and in favor of the stockholders represented by him, to rescind their contracts of subscription on account of representations respecting the existence of an advisory board. There is no rule more firmly established, or resting upon more just and equitable principles, than that the right of rescission on account of fraud must be promptly exercised on discovery of the ground therefor, and that the continued use or employment of property will, in such case, be construed as an election to affirm the contract under which it is received. The party defrauded has his election of remedies, viz., compensation in damage, or to be restored to the position in which he stood before the consummation of the contract. Such remedies are, however, not concurrent, but inconsistent, and one who has, with a knowledge of the facts, made his election, must abide it. (1 Addison, Contracts, sec. 312; Pollock, Contracts, p. 537; Bishop, Contracts, sec. 204 *et seq.; Brown v. Waters*, 7 Neb., 424; *Building & Loan Association v. Cameron*, 48 Neb., 124; *Schiffer v. Dietz*, 83 N. Y., 300; *Strong v. Strong*, 102 N. Y., 69; *Grymes v. Sanders*, 93 U. S., 55.) It has been said: "A subscriber to stock in a corporation may waive any defense he may have to the subscription. The waiver may be expressed, or it may arise

by implication from the acts and declarations of the subscriber. Thus, the payment of a call with the full knowledge of the defense is held to be a waiver; and any act indicating a clear intent to abide by, or accept, or pass over an objection which the subscriber might make will be held to be a waiver. (1 Cook, Stock & Stockholders [2d ed.], sec. 198.) Certainly a more fitting application of the rule there stated cannot be conceived than to the facts of this case, since the plaintiff, while holding an office of trust to which he was eligible solely by reason of his relation to the association as a stockholder, received from the treasury thereof for his services as director and attorney $3,500 or more; and the other stockholders, through whom he claims, were, on account of his relation toward them, also charged with the knowledge possessed by him respecting the business methods of the association, so that each, in legal effect, paid assessments on his stock for more than three years after notice of the fraud now alleged for the purpose of avoiding such contracts.

It is argued that the facts constituting a waiver should have been specially pleaded, and are not available under the issues presented. It is true the answer, so far as it relates to that branch of the case, consists of a general denial, but the claim of counsel in that behalf is, nevertheless, without merit. It was necessary for the plaintiff to allege and prove a rescission within season, and the denial of that allegation presents a material issue which is fully met by the evidence above alluded to. A defense which merely disproves the allegations of the adverse party is not new matter within the meaning of the Code, and is therefore admissible in evidence under a general denial. (Kinkead, Code Pleading, p. 82; Bliss, Code Pleading, sec. 327.)

The next proposition discussed involves the alleged agreement of the association to maintain a local board in the city of Norfolk. The only evidence adduced in support of that contention is the following statement

found in the so-called "blue circular": "A local board of directors may be elected in towns where sufficient business is done to warrant it. Such board may elect a local treasurer or collector, who may receive monthly payments on giving a bond. Such local treasurer will be deemed the agent of the members and not of the association. The officers of the local board should consist of a president, secretary, and treasurer, and a board of not less than three, and not more than nine, directors. No loans will be made in any town unless a local board is organized. All applications for loans will be submitted to the local board for approval. The plan of establishing local boards in a large number of towns enables the association to do a more satisfactory business than if the membership were confined to one locality. Some towns want no loans; others want a good many. The money therefore goes where it is wanted." Waiving, for the present, the materiality of this evidence, and assuming with counsel for defendant in error that the printed statement relating to the local board was a controlling inducement to each contract of subscription, thus entering into and becoming an essential part thereof, is the association answerable in this action by reason of the alleged breach of such condition? We think not, for two reasons: First, because there is a failure of proof upon that issue; and second, the alleged refusal of the association to maintain a local board in the city of Norfolk from and after the month of August, 1891, of itself presents no sufficient ground for rescinding the contracts of subscription. An examination of the question suggested by this contention necessitates a reference to the evidence preserved in the bill of exceptions. It appears that a local board was established at Norfolk in the month of July, 1888, and there is no claim that it has been abolished by any act of the association, except as hereafter shown. The plaintiff below during all of said period acted in the capacity of collector for the association, under written authority, of which the following is a copy:

"NORFOLK, NEB., July 3, 1888.

"The American Building & Loan Association hereby appoints N. A. Rainbolt local depository or collector for the town of Norfolk, in the state of Nebraska.   A commission of one per cent will be allowed for collection. The said N. A. Rainbolt agrees to make collections for said association at the rate of commission above mentioned, and to send a statement to said association with remittances on the first day of each month, or at such other time as said association may request.

"N. A. RAINBOLT,

"Agent.

"The above appointment is approved by the American Building & Loan Association.       F. P. RUNDELL,

"President."

It is contended by Mr. Rainbolt that he was also acting in the capacity of treasurer of the local board, but that claim has, we think, no sufficient foundation in the record.   Referring to the subject, he testified as follows:

Q. Now, Mr. Rainbolt, you refer to the fact that there was some talk of your being appointed collector for the company at Norfolk?

A. Yes, sir.

Q. Were you so appointed?

A. Yes, sir.

Q. You may state when your appointment was made.

A. Well, this is my appointment, dated July 3 [referring to Exhibit "L," the instrument above set out].   This appointment I received in consequence of the agreement made with Mr. Chilstrom [plaintiff in error's agent].

Q. Do I understand you had another appointment, or was otherwise appointed then?

A. No.

Q. Exhibit "L" is a notification of your appointment as such collector, is it?

A. Yes, sir; it was the contract of appointment.

On August 10, 1891, Mr. Bishop, secretary of the asso-

ciation, addressed to the bank of which the defendant in error was president the following communication:

"MINNEAPOLIS, August 10, '91.

"*Norfolk National Bank, Norfolk, Neb.:* You will please take notice that at a special meeting of the directors of the American Building & Loan Association, held at the home office at Minneapolis, on August 7, 1891, the following resolutions were unanimously passed:

" 'First. *Resolved,* That from and after this date the appointment of collectors in the state of Nebraska be, and the same are hereby, revoked and canceled; that no further appointment of collectors be made in that state, and that the secretary of the association be instructed to notify all persons in said state who may be interested.

" 'Second. *Resolved,* That from and after this date all members of this association in the state of Nebraska shall be required to remit all payments direct to the home office, in accordance with the terms and conditions named in the second clause of their certificates of stock. Any payments made in any other manner than as above indicated will not be credited on our books.'

"Yours truly,                    T. E. BISHOP,
                                      "*Secretary.*"

No direct acknowledgment of the foregoing appears to have been made, but on August 24, 1891, the following letter was, by the defendant in error, addressed to the association:

"NORFOLK, NEB., August 24, 1891.

"DEAR SIRS: At the request of the stockholders of your association in Norfolk, Pierce, and Tilden, I write you as follows:

"That each of said stockholders have received notice that your board of directors within the past month passed a resolution depriving them of rights and privileges which entered into and formed part of the contract whereby they subscribed to stock in your association, and whereby payments thereon have continued to the present time.

"That you have thereby and in other matters violated the contract of their subscription to said stock, and it is now impossible for you to comply with, or perform in all its details, your part of said contract, the same must be considered as rescinded. They therefore, and each of them, hereby demand a return to them of all the money which they have paid to you on said stock, with proper interest thereon.

"That if said money is not returned to them within a reasonable time after you have received this notice, such steps will be taken to recover the same as may appear advisable.

"Respectfully yours,          N. A. RAINBOLT."

To that communication Mr. Bishop, in behalf of the association, responded as follows:

"MINNEAPOLIS, MINN., 8-26-91.

"*N. A. Rainbolt, Esq., Norfolk, Neb.*—DEAR SIR: Your favor of the 24th inst., relating to the matter of a certain resolution recently passed by the board of directors, and containing a demand for the return of the money paid by the shareholders in Pierce, Tilden, and Norfolk, is at hand.

"For reply I have to say that it was not the intention of board of directors in passing this resolution to forbid the shareholders to appoint their own agent for receiving of and transmitting their payments, but only to revoke the authority of any collector who had been appointed by the association, or who may have been considered by the shareholders as the agent of the association. It was far from the intention of the board to deprive any shareholder of the privilege of appointing their own collectors. In fact, we would be very glad, indeed, to have them do so.

"We would most assuredly contest the attempt of any shareholder to nullify his contract with the association by reason of the refusal to maintain its own agents for the collection of dues. There is no provision contained

in any of our literature or certificates of stock binding the association to maintain its own agents for such purpose. You have been a director of the association for three years, and, being an attorney by profession, ought to be able to recognize the utter futility of the claim you make.

"Yours truly,

"AMERICAN BUILDING & LOAN ASS'N,

"By JAS. H. BISHOP, *Pres't.*"

The utmost that can be said for this proof is that it shows a revocation of the defendant in error's authority as an agent of the association, leaving him free to represent the local board in any capacity not inconsistent with the rules and by-laws prescribed for its government. There is no imputation of fraud or misrepresentation respecting the local board as an inducement to the contracts of subscription, and the fact that such a board was organized and maintained without objection for more than three years is the most satisfactory evidence of good faith on the part of the association.

That a contract may be rescinded for causes arising subsequent to its execution, such as the non-performance of a condition precedent, is not denied, although every breach of contract by one party will not authorize the other to treat it as abandoned. There is not, as said by Judge Marcy in *Dubois v. Delaware & Hudson Canal Co.*, 4 Wend. [N. Y.], 285, "Any precise rule which, when applied to the breach of a contract, certainly settles the question whether it is thereby abandoned or not, but if the act of one party be such as necessarily to prevent the other from performing on his part, * * * the contract may, I think, be treated as rescinded." And it was held by Lord Coleridge in *Freeth v. Burr*, L. R., 9 C. P. [Eng.], 213, that the true question is whether the acts and conduct of the party evince an intention no longer to be bound by the contract. (See, also, 2 Parsons, Contracts, 278; *School District v. Hayne*, 46 Wis., 511; *Blackburn v. Reilly*, 47 N. J. Law, 290.) In *Hoffman v. King*, 70

Wis., 372, the court, in a carefully prepared opinion, by Cassoday, J., approve, without qualification, of the rule as stated by Chief Justice Shaw in *Proprietors of Mill Dam Foundery v. Hovey*, 21 Pick. [Mass.], 417, who there said: "It seems to be well settled that where there is a stipulation amounting to a condition precedent, the failure of one party to perform such condition will excuse the other party from all further performance of stipulations depending upon such prior performance. But a failure to perform an independent stipulation not amounting to a condition precedent, though it subject the party failing to damages, does not excuse the party on the other side from the performance of all stipulations on his part. * * * In order to construe a stipulation on one side to be a condition precedent to an obligation to perform on the other side, it must in general appear either: (1.) That the undertaking on one side is in terms a condition to the stipulation on the other. * * (2.) It must result from the nature of the acts to be done, and the order in which they must necessarily precede and follow each other in the progress of performance, * * * as where one stipulates to manufacture an article from materials to be furnished by the other, and the other stipulates to furnish the materials, the act of furnishing the materials necessarily precedes the act of manufacturing, and will constitute a condition precedent without express words. But when the act of the one is not necessary to the act of the other, though it would be convenient, useful, or beneficial, yet, as the want of it does not prevent performance, and the loss and inconvenience can be compensated in damages, the performance of the one is not a condition to the obligation to perform by the other. (3.) The non-performance on one side must go to the entire substance of the contract, and to the whole consideration, so that it may be safely inferred as the intent and just construction of the contract that if the act to be performed on the one side is not done, there is no consideration for the stipulations on the other

side,  *  *  *  yet, if it does not go to the whole consideration and the loss can be compensated in damages, the stipulation must be construed to be independent, for breach of which the party sustaining such loss has his remedy by action, but it is not a condition precedent, upon the non-performance of which the other party is absolved from the performance of the stipulations on his part." The doctrine there stated is not only reasonable and just, but is, it is believed, sanctioned by the decided weight of authority in this country and England. Granting, therefore, for the purpose of the argument, that the statement contained in the plaintiff's circular should be construed as a special covenant to maintain a local board, it is, at most, an independent provision collateral to the real consideration for the contract of subscription, and the breach thereof in no measure affects the ability of the association to discharge the obligation assumed by it towards its members or stockholders. It is not charged or claimed that the association refused to make loans to its members in accordance with its rules and by-laws, or that it neglected or refused to submit applications for loans to the local board. Consequently the only damage resulting from the abolition of such board is the inconvenience of being required to remit to the association at Minneapolis instead of making payments through the agency of a local treasurer, and for which the remedy by action is in all respects adequate.

Another fatal objection to the right of rescission in this case is that the abolition of the local board, like the alleged failure to transfer surplus money to the loan fund, amounts to no more than a mismanagement of the affairs of the association. It is the duty of the members to select competent officers to conduct the corporate affairs, and failing to do so, they will not be heard to complain if those chosen for that purpose prove incompetent or inattentive to the trust reposed in them. (Beach, Private Corporations, sec. 110; 1 Cook, Stock & Stockholders [2d ed.], sec. 188.)

The remaining questions relate to the failure of the association to comply with the provisions of the act of 1891. The allegations of the petition are, in substance, that the association has not filed with the auditor of public accounts a certified copy of the statute under which it was organized, or its articles of incorporation and by-laws; that it has not appointed an attorney in any of the counties of the state on whom service of process can be made; and that it has not obtained from the auditor, attorney general, and state treasurer a certificate authorizing it to transact business within the state. It is by section 17 of the act in question provided: "It shall not be lawful for any foreign building and loan association, directly or indirectly, to transact any business in this state without first procuring a certificate of approval and authorization from the auditor of public accounts, state treasurer, and attorney general, or any two of them. Before obtaining such certificate, such foreign building and loan association shall furnish the auditor with a statement, sworn to by its president or secretary of the association, which statement shall show," etc. (Session Laws, 1891, p. 212, ch. 14, sec. 17.) Among other facts required to be shown by such statement are the resources and liabilities of the association, its articles of incorporation and by-laws, the number and estimated cash value of its stock per share. It is also required to appoint an attorney in each county in which it may transact business, with authority to accept service or waive process in its behalf. By section 19 it is provided: "Any person, agent, or company doing business, or attempting to do business, in this state for any foreign building and loan association, which shall not at the time be the holder of a valid certificate of approval and authorization as provided for in section 17 of this act, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined in any sum not exceeding one thousand dollars, or imprisoned in the county jail not more than thirty days, or both, at the discretion

33

of the court." (Session Laws, 1891, p. 214, ch. 14, sec. 19.)
We are unable, notwithstanding the exhaustive and
scholarly argument of counsel for defendant in error, to
perceive any possible application of the foregoing pro-
visions to the case at bar. Had the act of 1891 in express
terms declared nugatory and void all contracts of build-
ing and loan associations failing to conform to the con-
ditions thereby imposed, it would, as to existing agree-
ments, have been a clear invasion of constitutional rights
as impairing contract obligations. So numerous are the
decisions in point since the foundation of the law upon
the subject was laid by Chief Justice Marshall in *Fletcher
v. Peck,* 6 Cranch [U. S.], 87, that a review of the cases in
this connection would be useless, if not, indeed, pre-
sumptuous. It is sufficient that the obligation of a con-
tract is impaired within the prohibition of the constitu-
tion whenever the remedy is taken away or abolished,
or the legal obligation diminished, suspended, or de-
stroyed by repealing or abolishing the remedy therefor,
or when the proceedings for enforcement are burdened
with new or unreasonable conditions or restrictions.
(*Bronson v. Kinzie,* 1 How. [U. S.], 311; *Von Hoffman v.
City of Quincy,* 71 U. S., 535; *Gunn v. Barry,* 82 U. S., 610;
*Louisiana v. New Orleans,* 102 U. S., 203.) But such, in
the opinion of the writer, is neither the express nor
implied purpose of the act. The primary object of the
statute cited is not to render void the transactions of
associations failing to comply with its demands, but to
bring a designated class of foreign corporations within
the jurisdiction of the courts of this state, in order to
protect parties with whom they may transact business
from fraud and imposition. In 2 Morawetz, Private Cor-
porations [2d ed.], sec. 665, we find the rule thus stated:
"The object of the various statutes providing that foreign
corporations, before transacting business, shall comply
with specified conditions, such as filing copies of their
charters, making statements of their financial condition,
appointing agents upon whom process shall be served,

etc., is to protect parties dealing with them from imposi-
tion and to secure convenient means of obtaining jurisdic-
tion in the local courts.  These statutes place foreign cor-
porations in the same position as domestic corporations
in the particulars provided for.  It is clearly not the pri-
mary purpose of the legislature in passing these statutes
to render the contracts and dealings of corporations
which have not complied with the statutes void and
unenforceable.  Hence, when the legislature has not ex-
pressly declared that this result shall follow from a
failure to comply with the statute, the courts ought not
to imply such a result unless this be necessary in order
to attain the primary object for which the statute was
passed."  We observe numerous reported cases in which
that doctrine is expressly approved.  For instance, *Dear-
born Foundry Co. v. Augustine,* 5 Wash., 67, involved a
statute which authorized corporations to transact busi-
ness upon terms substantially like those above enumer-
ated, and providing that agents transacting business for
corporations which had not complied with the conditions
imposed by statute should be guilty of a misdemeanor.
It was held that such contracts are not void in the ab-
sence of a statute so declaring.  In *La France Fire Engine
Co. v. Davis,* 9 Wash., 600, that case was cited and fol-
lowed.  By statute of the territory of Dakota it was pro-
vided that "No foreign corporation   *   *   shall trans-
act any business within this state [territory], or acquire,
hold, or dispose of property   *   *   *   until such corpo-
ration shall have filed in the office of the secretary of
state [territory] a duly authenticated copy of its charter
or articles of incorporation, and shall have complied with
the provisions of this chapter."  (Revised Code, N. Dak.,
ch. 22, sec. 3261.)  The next section, among other things,
required the appointment of an agent, to reside at some
accessible point in the territory, on whom service could
be made, and for the filing of written notice of such ap-
pointment with the register of deeds of the proper county.
That act has recently been examined and construed by

the courts of both North Dakota and South Dakota with the thoroughness and ability which characterizes the decisions of those tribunals, and resulting in the conclusion that the statute was not intended as a prohibition upon the powers of foreign corporations to make valid contracts, but to bring them and their property within the jurisdiction of the courts of the territory. (See *Wright v. Lee*, 2 S. Dak., 596, same case on rehearing, 4 S. Dak., 237; *Washburn Mill Co. v. Bartlett*, 3 N. Dak., 138; also *Edison General Electric Co. v. Canadian Pacific Navigation Co.*, 8 Wash., 370; *Fisk v. Patton*, 7 Utah, 399; *Kindel v. Beck & Pauli Lithographing Co.*, 35 Pac. Rep. [Colo.], 538; *State Mutual Fire Ins. Association v. Brinkley Stave & Heading Co.*, 31 S. W. Rep. [Ark.], 157; *Connecticut River Mutual Fire Ins. Co. v. Whipple*, 61 N. H., 61; *Connecticut River Mutual Fire Ins. Co. v. Way*, 62 N. H., 622; *Union Mutual Life Ins. Co. v. McMillen*, 24 O. St., 67; *Hartford Live Stock Ins. Co. v. Matthews*, 102 Mass., 221; *Powder River Cattle Co. v. Commissioners, Custer County*, 9 Mon., 145; *Toledo Tie & Lumber Co. v. Thomas*, 33 W. Va., 566; *Chattanooga, R. & C. R. Co. v. Evans*, 14 C. C. A., 116; *Fritts v. Palmer*, 132 U. S., 232; *Seymour v. Slide & Spur Gold Mines*, 153 U. S., 523.)

We have not overlooked the case of *Barbor v. Boehm*, 21 Neb., 450, holding that notes given for insurance to a company which had failed to comply with the provisions of the statute with respect to the filing of a statement and procuring a certificate authorizing it to transact business, were by reason of that fact invalid as to the original parties. It is sufficient, without quoting at length from the statute therein involved, that its provisions, so far as they relate to the subject under discussion, are not essentially different from those of the act of 1891 above referred to. Hence that case, if accepted as an authoritative statement of the law, must be regarded as decisive of the question now at issue. But the doctrine there asserted cannot be reconciled with the later decisions of this court, nor, indeed, with the earlier case

of *Missouri Valley Land Co. v. Bushnell*, 11 Neb., 192, hold-
ing that the grantee of land by a deed from a corporation,
by its charter prohibited from acquiring or conveying
real estate, would not, in an action for the price of land so
conveyed, be heard to allege the want of capacity on the
part of his grantor, and that such conveyance is not void
absolutely, but valid and enforceable unless assailed in a
direct proceeding by the state.    In *Carlow v. Aultman*,
28 Neb., 672, following the case last cited, it was held
that foreign corporations might acquire, hold, and con-
vey land in this state, notwithstanding section 1, chapter
65, Laws, 1887, then in force, by which they were prohib-
ited from acquiring or disposing of real estate except for
certain designated purposes.    *Myers v. McGavock*, 39 Neb.,
843, presented the question of the power of a corporation
organized under the laws of congress to acquire and hold
real estate in violation of the restrictions imposed by
section 8, article 11, Constitution of 1875, viz.: "No rail-
road corporation organized under the laws of any other
state, or of the United States, and doing business in this
state, shall be entitled to exercise the right of eminent
domain or have power to acquire the right of way, or
real estate for depot or other uses, until it shall have
become a body corporate pursuant to and in accordance
with the laws of this state."    It was held on the authority
of *Missouri Valley Land Co. v. Bushnell* and *Carlow v. Ault-
man* that the title of the railroad company to real estate
acquired in violation of the foregoing constitutional pro-
hibition could not be questioned except in a proceeding
for that purpose by the state; and in *Hanlon v. Union P.
R. Co.*, 40 Neb., 52, the question was again examined and
the doctrine of the previous cases expressly approved.

No more radical application of the rule here asserted
has been made than in the foregoing decisions by this
court, since the act involved in each is a violation of the
corporation's charter by the usurpation of powers plainly
prohibited, and not, as in the case at bar, the disregard
of a mere condition obviously imposed in the interest of

persons dealing with the class of associations to which it applies.     That *Missouri Valley Land Co. v. Bushnell* should have been overlooked in *Barbor v. Boehm* is to be deplored, since to that fact must be attributed the conflicting and irreconcilable utterances upon the subject by this court. That the last mentioned case is opposed to the weight of authority is manifest from the foregoing citations, and that it is unsound in principle is equally apparent.     The defendant therein had received from the insurance company named a policy which was valid and enforceable (1 Beach, Insurance, sec. 64, and cases cited; 1 Biddle, Insurance, sec. 96), and, therefore, a sufficient consideration for the notes which were the subject of the controversy.     But the force of that case is weakened by another fact, which is that the cases therein cited, to-wit, *Ætna Ins. Co. v. Harvey*, 11 Wis., 412, and *Cincinnati Mutual Health Assurance Co. v. Rosenthal*, 55 Ill., 85, appear to have been materially modified by more recent decisions in the states named. (*Vide Charter Oak Life Ins. Co. v. Sawyer*, 44 Wis., 387; *Stevens v. Pratt*, 101 Ill., 217; *Alexander v. Tolleston Club of Chicago*, 110 Ill., 65; *Barnes v. Suddard*, 117 Ill., 237; *Pennsylvania Co. for Insurance on Lives v. Burle*, 143 Ill., 459.) However reluctant courts may be to overrule cases which for years have had the apparent sanction of the bench and bar, there can be no excuse for hesitation when, as in this instance, a prior decision is both indefensible on principle and opposed to later utterances of the same tribunal.     It should, in conclusion, be remarked that the writer is alone responsible for the criticism here indulged respecting the case of *Barbor v. Boehm*, the majority of the court preferring to base the judgment of reversal upon the proposition that the act of 1891, whatever may have been the purpose of the legislature, cannot be construed as affecting contracts existing at the time it took effect.

REVERSED AND REMANDED.

HARRISON and NORVAL, JJ.

We concur in the judgment just rendered, but do not concur in all the arguments of the chief justice in the foregoing opinion, especially those in conflict with the decision in *Barbor v. Boehm*, 21 Neb., 450.