H. E. GLATFELTER, APPELLANT, V. H. F. CURTIS ET AL., APPELLEES.

FILED MARCH 20, 1936. NO. 29564.

*W. T. Thompson* and *John L. Mattox,* for appellant.

*C. J. Campbell* and *Fradenburg, Stalmaster & Beber,* contra.

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

GOOD, J.

This is an action to recover $4,250 alleged to be due plaintiff from defendants upon a written contract. It was alleged that the contract was executed by plaintiff and defendant Curtis, but, in fact, Curtis was acting not only for himself but for the Lyman-Richey Sand & Gravel Company (hereinafter referred to as the company), of which Curtis was president, and that therefore both defendants are liable to the plaintiff. The company denied that it was a party to the agreement or was liable thereon. Defendant Curtis admitted the execution of the contract, and each of

the defendants set up an affirmative defense that all claims of the plaintiff had been satisfied by a compromise agreement, by the terms of which plaintiff was paid $1,500 cash, given a promissory note for $1,500, a deed to certain real estate, and released from a provision in the original contract whereby plaintiff agreed to abstain from engaging in the sand and gravel business for a period of 15 years. Plaintiff admitted the execution of the settlement contract, but sought to avoid it on the ground that it was procured by fraud and duress. A trial of the issues to a jury resulted in a verdict and judgment thereon for defendants. Plaintiff has appealed.

The record discloses that January 9, 1926, a written option contract was executed by Glatfelter & Powell and Curtis, wherein the former gave an option to the latter to purchase the sand and gravel properties of Glatfelter & Powell, for a consideration named therein, within a stipulated period. Curtis exercised the option within the prescribed period, and the sand and gravel properties were conveyed to him. The consideration mentioned in the contract was $1,000, paid at the time the option contract was executed; $19,000, payable March 1, 1926; $30,000, payable April 1, 1926, and three promissory notes, aggregating $25,000. The promissory notes were due, respectively, March 1, 1927, 1928, and 1929. The contract further provided for the payment of $250 a month for 100 months, commencing April 1, 1926, to Glatfelter and a like amount to Powell. The contract further recited that Glatfelter & Powell would refrain from engaging in the sand and gravel business in the state of Nebraska for 15 years from April 1, 1926. The payments, aggregating $75,000, which were to be made to Glatfelter and Powell jointly, have been made, and a number of the 250-dollar payments have been made to Glatfelter. It is alleged that $4,250, however, was due plaintiff upon the 250-dollar monthly payments when this action was instituted. The record also discloses that shortly after Curtis acquired the properties of Glatfelter & Powell he leased them, with others that he had acquired, to the

company. There were three of these leases, each running for one year. After the expiration of the leases the properties were conveyed absolutely to the company. After the first of the leases was executed the 250-dollar monthly payments to Glatfelter were made by the company.

April 23, 1932, a compromise contract was entered into between Glatfelter, on the one hand, and Curtis and the company, on the other. By the terms of this settlement contract $1,500 in cash was paid to Glatfelter; he was given a promissory note for $1,500 and a deed to certain real estate, and he was released from his agreement to refrain from engaging in the sand and gravel business, as provided in the original contract. Plaintiff seeks to avoid this contract of settlement on the ground that it was procured by fraud and duress. The fraud alleged is that defendants falsely represented that the company was in financial difficulties, was insolvent and unable to pay its obligations in full. Plaintiff also alleged that at the time the contract of settlement was entered into he was threatened with prosecution under the anti-trust laws of the state whereby he would be criminally liable; that an action was then pending by the attorney general against the company and others, and that he would be made a party to this action; that this threat so operated on his mind as to destroy his free agency, and that, under the influence of the fraud and duress so practiced, he was induced to enter into the settlement contract. Plaintiff contends that he did not learn of the fraud practiced upon him until several months later, and very soon thereafter he rescinded the contract of settlement, and in December, 1932, tendered to Curtis return of the promissory note and the deed he had received, but did not return the $1,500 cash, as more than that amount was then due him under the original contract.

On trial of the cause, the court submitted to the jury the question of whether the original contract entered into was in behalf of the defendant Curtis alone or whether he was acting for himself and the company; and submitted to the jury the question of whether or not the contract of settle-

ment in April, 1932, was procured by fraud and duress, and in that connection gave this instruction: "In order to void the contract of April 23d, 1932, as obtained by fraud, or duress, it was incumbent upon the plaintiff to act to rescind it with reasonable promptness after learning the facts, that is, to tender back what he received thereby and disavow the contract, except that it was not necessary for him to offer back the $1,500 which he received. And if you find from the evidence that he failed to act with such promptness in this regard you are instructed that he is not entitled to recover."

Since the verdict was for both defendants and since the only defense offered by Curtis was the compromise settlement, it is clear that the jury found from the evidence either that the contract of settlement was not procured by fraud or duress, or that plaintiff did not act with reasonable promptness in rescinding the contract of settlement.

Plaintiff contends that there is no evidence in the record that plaintiff did not act with reasonable promptness in rescinding the settlement contract; that by the quoted instruction the jury were given to understand that, under the facts disclosed, it was their province to determine whether or not plaintiff had acted with reasonable promptness in disavowing the contract, and that the instruction was, therefore, prejudicial to plaintiff.

With this contention we are unable to agree. Plaintiff made no complaint against the contract of settlement until November, 1932, and does not claim to have made any tender of return of the deed and promissory note until December, 1932. Plaintiff contends that he had no knowledge of the fraud until he learned of a settlement, made some time after April, 1932, between the company and Powell. Plaintiff testified that at the time the contract of settlement was executed he inquired what the company was going to do with Powell, and that Curtis answered, in effect, that Powell would receive nothing further on his contract, and that plaintiff learned later that a settlement was made with Powell, whereby a considerable amount was paid to him.

We fail to discern wherein this information advised plaintiff of any fraud that may have been practiced upon him. From the record it appears that plaintiff was a man of education and quite large business experience; that he had in his employ an able lawyer much of the time and frequently consulted him on business matters.

From an examination of the record, it is very questionable whether there was sufficient evidence to warrant the jury in finding that the representation that the company was in financial stress was untrue. So far as the duress is concerned, plaintiff must have known thereof at the time the contract of settlement was made. Accepting as true his statement, he could have readily ascertained that the action pending against the company and others, to which, it was threatened, he would be made a party, was not a criminal action but one civil in its nature. But, aside from this, there is no competent evidence to show that plaintiff may not have been aware of any fraud or duress practiced upon him immediately after the settlement contract in April, 1932. Under these circumstances, we are convinced that it was a question of fact as to whether or not, under all the circumstances, he acted with reasonable promptness in disavowing the contract.

It is a rule of law that one who seeks to avoid a contract, the execution of which he claims was procured by fraud or duress, must act to rescind within a reasonable time after discovery of the fraud or duress.

In *Arnold v. Dowd*, 85 Neb. 108, 122 N. W. 680, it was held: "The right to rescind a contract for fraud must be promptly exercised upon discovery of the ground therefor." A similar holding was made in *American Bldg. & Loan Ass'n v. Rainbolt*, 48 Neb. 434, 67 N. W. 493. In the latter case it was held: "The right to rescind a contract on the ground of fraud must be promptly exercised upon the discovery of the ground therefor. The continued use or employment of property will, in such case, be construed as an election to affirm the contract under which it was received." This holding was reaffirmed in *Pollock v. Smith*, 49 Neb.

864, 69 N. W. 312. A similar ruling was made in *Vavra v. Claridge*, 112 Neb. 553, 199 N. W. 834. In the latter case it was further held that a "delay of two weeks, when no injury is shown to have accrued to the adverse party, is not an unreasonable delay."

Several months elapsed after the execution of the settlement contract before plaintiff made any complaint, and when, by the exercise of reasonable diligence, he might have been apprised as to whether the representations made were true or false, and been apprised of the character of the action to which he was threatened to be made a party. Under these circumstances, it was a question of fact as to whether the delay was unreasonable, and was a proper question to be submitted to the jury. We think that the court did not err in giving the quoted instruction.

Complaint is made of the giving of other instructions, which we have carefully examined, and we find no error in their giving. Plaintiff complains of the exclusion of certain testimony offered on rebuttal. Objection was sustained on the ground that the evidence was not proper rebuttal. We think the objection was properly sustained. The proffered evidence should have been offered in chief.

Error prejudicial to plaintiff has not been found. The judgment is

AFFIRMED.