GEORGE F. McGUIRE, APPELLEE, v. CAL THOMPSON,
APPELLANT.

40 N. W. 2d 237

Filed December 12, 1949.   No. 32677.

*Siman & Olds,* for appellant.

*Budd B. Bornhoft,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action at law to rescind an oral agreement made between the plaintiff and defendant whereby the plaintiff was to exchange his stallion for defendant's mare. The case was tried to a jury, resulting in a verdict for the plaintiff, fixing the value of the stallion at $791. Upon the overruling of defendant's motion for new trial, the defendant appealed.

The plaintiff's amended petition set forth the agreement for the exchange of horses, the reliance of the plaintiff on the representation made by the defendant that the mare he traded was with foal which proved to be false, that upon discovery of the fraud the plaintiff rescinded the contract, returned the mare, and requested the return of his stallion which defendant refused.

Defendant's answer was a general denial of the allegations of plaintiff's amended petition and affirmatively alleged that the plaintiff was not the real party at interest. Defendant cross-petitioned for the feed and keep of the mare while in his possession, praying for $820 as the amount. The reply denied generally the affirmative allegations of the defendant's answer and cross-petition.

For convenience we refer to the parties as they appeared in the district court.

The record discloses that the plaintiff is a farmer residing near Wisner, Nebraska. He testified that in the latter part of May and the fore part of June 1945, he owned a perfect, two-year-old albino stallion in good health; that the defendant, one of the operators of the "White Horse Ranch" in Boyd County and a dealer in albino horses, called at the plaintiff's home for the purpose of negotiating an exchange of a mare for the plaintiff's stallion. At that time an oral agreement was consummated between the parties whereby the plaintiff was to trade his stallion for defendant's mare, expressly guaranteed by the defendant to be with foal and to deliver a fall colt. Present at the time the agreement was made were the plaintiff, his son, the defendant, and his wife. Pursuant to the

agreement, in the first week of June 1945, the defendant delivered the mare to the plaintiff's farm. The plaintiff was not at home at the time, but was called by his son. Upon arriving home he ascertained that his son did not believe the mare was with foal. The plaintiff told the defendant he did not believe the mare was with foal, to which the defendant replied: "I guarantee her to be in foal." The defendant further represented the mare to be "seven to eight months along." The plaintiff relied upon and believed the representation made by the defendant. As a result the defendant left the mare and took the stallion. The plaintiff kept the mare for ten months and she failed to deliver a colt. In February 1946, the plaintiff wrote to the defendant stating that the mare was not with foal and he was going to return her, and demanded the return of the stallion. He also testified that he had lived on a farm all his life, owned and raised horses, and was familiar with breeding horses; that the period of gestation for a mare is approximately 11 months; that during the period of time the mare was in his possession she did not show any indications that she was with foal; and that you can generally tell when a mare is eight or nine months along whether or not she is with foal by looking at her. In April 1946, the plaintiff returned the mare to the defendant's ranch and requested the defendant to return the stallion, which the defendant refused to do. At that time the defendant represented that the mare was supposed to be with foal. Plaintiff fixed the value of the stallion at the date of the trade in the amount of $1,200. The mare was ridden by his daughter on several occasions, and was not abused.

The plaintiff's son corroborated his father's testimony with respect to the conversation had between the plaintiff and defendant wherein the defendant guaranteed the mare to be with foal.

A witness present at the time the mare was delivered to the plaintiff by the defendant testified to the conversation had between them wherein the plaintiff stated that

the mare did not look like she was with foal, and the defendant said he would guarantee the mare to be with foal.

A neighbor and acquaintance of the plaintiff went with him to return the mare. He testified that the plaintiff told the defendant that he was returning the mare, and she was supposed to be with foal. The defendant stated that at the time he made the trade he guaranteed the mare to be with foal, and refused to return the stallion.

The defendant testified to the agreement as follows: That he told the plaintiff the mare was bred and should have a colt in the fall; that the negotiations were had in the presence of the plaintiff's family; and that a daughter of the plaintiff was desirous of having the mare as a saddle mare. He understood and believed the stallion was owned by the daughter, and the purpose of the exchange was for her benefit. At the time of the exchange it was hard to tell whether or not the mare was with foal, but due to the enlargement of her stomach she looked like she was with foal. He received a letter from the plaintiff dated February 25, 1946, wherein the plaintiff stated he was going to return the mare and wanted his stallion returned to him. In this letter the plaintiff stated that when the defendant brought the mare to plaintiff's farm he said to him: "That mare is not with foal" and the defendant said she was, but it would be a fall colt. The plaintiff said: " * * * *if the mare is in foal we will trade," and that the mare not being in foal, there was not any trade.

Upon the return of the mare to the defendant's ranch he offered to re-breed her, or in the alternative, offered the plaintiff another mare in exchange, which offers were refused by the plaintiff.

The defendant further testified that he did not believe the stallion was old enough to breed, the average age for such purpose being two-and-one-half to three years. In August of 1945, he castrated the stallion for the reason that it was not a pure albino and it would not be feasible

to use the stallion for breeding purposes. He explained several points about the stallion upon which he based his opinion, and testified that the value of the stallion at the time of the exchange was from $125 to $150, and that the value would increase by the training of the stallion for show purposes. He also testified that if the plaintiff had watched the mare he could have ascertained by her actions whether or not she was with foal.

The defendant's wife testified that at the time the negotiations were made for the trade she had a conversation with the plaintiff's daughter who was interested in getting the mare for riding purposes. In this conversation, the plaintiff's daughter said she owned a colt but the colt was not old enough to be ridden. This colt is the stallion referred to in the record. The defendant did not guarantee to furnish a mare with foal. He stated that he would trade a mare that was bred, and that was all that was said. She was present when the plaintiff returned the mare to the ranch, and when he drove up she talked to him. He said: "Take your mare." The witness said: "Well, she isn't my mare, she is yours." Shortly thereafter the defendant appeared and told the plaintiff that he would breed the mare, or, if the mare was not satisfactory, he would give him another one. The plaintiff refused such offers and said he would take his colt back. The defendant told the plaintiff at that time that he could not return the colt because the colt had been castrated, and the only thing that could be done would be to adjust the matter. She estimated the value of the stallion at the time of the trade from $135 to $150, and corroborated her husband's testimony that the stallion was not a perfect albino that could be used for breeding purposes.

The plaintiff, in rebuttal, denied that the defendant offered to breed the mare when he returned her but that he had offered to do so on a previous occasion; denied that he offered to give him another mare in exchange; and that he did not tell the plaintiff at that

time that the stallion had been castrated. He reiterated his statements made on direct examination that the stallion was a perfect albino, and explained the markings of the animal in this respect.

At the conclusion of the plaintiff's testimony and at the conclusion of all the testimony, the defendant moved for a directed verdict, which was overruled. From a review of the record, the trial court did not err in over-ruling the motions for directed verdict.

We take up the pertinent assignments of error necessary to a determination of this appeal in continuity.

The defendant contends that the jury was guilty of misconduct by arriving at a quotient verdict, and thereby prejudicial error was committed. We have examined affidavits and counter affidavits of jurymen, which need not be set out, and conclude the following authorities are applicable to this assignment of error.

"The mere fact that jurors upon retirement ascertained the amount to which each juror believed the plaintiff was entitled, and afterwards agreed upon the average of these amounts as the amount of recovery, does not avoid the verdict, where it also appears that there was no previous agreement that the sum thus arrived at should be controlling, and no juror was bound to accept this amount unless he believed it to be a just and fair estimate of the damages sustained." Herbert v. Katzberg, 104 Neb. 395, 177 N. W. 650. See, also, Janesovsky v. Rathman, 107 Neb. 165, 185 N. W. 411; Village of Ponca v. Crawford, 23 Neb. 662, 37 N. W. 609, 8 Am. S. R. 144; Metcalf v. Bockoven, 62 Neb. 877, 87 N. W. 1055.

On the hearing of the motion for new trial the court considered the question as to whether or not the jury had arrived at a quotient verdict and found against defendant's contention in such respect.

"The ruling of the trial court, on matters involving the misconduct of counsel or jury, will not ordinarily be disturbed on appeal where there is evidence to support the findings of the trial court thereon." Thoren v. Myers,

151 Neb. 453, 37 N. W. 2d 725. See, also, Scherz v. Platte Valley Public Power and Irrigation Dist., 151 Neb. 415, 37 N. W. 2d 721.

The defendant contends the trial court committed prejudicial error in permitting a veterinarian and the plaintiff's son to testify to the value of the stallion at the time of the exchange of the stallion for defendant's mare.

The plaintiff's son, aged 30 years, was raised on a farm, helped to raise horses and knew their value, and was acquainted with his father's stallion. The veterinarian had practiced his profession 40 years, was acquainted with the plaintiff's stallion, and based part of his opinion as to its value on its breeding propensities, fixing the amount from $1,000 to $1,400. The mere fact that there were no sales of such horses in the immediate vicinity, or any other stallion of the same kind therein, does not disqualify these witnesses to testify as to the value of the stallion at the time the exchange was made.

The right of the plaintiff to testify to the value of his stallion at the time is not questioned. The owner of chattels is qualified by reason of that relationship to give his estimate of their value. See, Anderson v. Chicago, B. & Q. Ry. Co., 84 Neb. 311, 120 N. W. 1114, 133 Am. S. R. 626; Western Home Ins. Co. v. Richardson, 40 Neb. 1, 58 N. W. 597.

" 'In the first place, the market value of domestic animals, such as horses, * * * is not such a subject as to be brought within the strict rule for receiving expert testimony. Values of this character are so easily and ordinarily understood that any one who knows should be permitted to testify. We can see no reason for it, nor any common sense, in applying the strict rules for expert testimony to testimony of this character.' " Bartlesville Interurban Ry. Co. v. Quaid, 51 Okl. 166, 151 P. 891, L. R. A. 1918A 653. See, also, Midland Valley R. R. Co. v. Larson, 41 Okl. 360, 138 P. 173.

"Reasonable experience in raising, dealing in and handling livestock is all the law requires in order to qualify

one to give an estimate of their reasonable value." Klind v. Valley County Bank of Hinsdale, 69 Mont. 386, 222 P. 439. See, also, Whitney v. Thacher, 117 Mass. 523; Mendenhall v. Struck, 207 Iowa 1094, 224 N. W. 95; 20 Am. Jur., Evidence, § 896, p. 754; 32 C. J. S., Evidence, § 476, p. 128; 32 C. J. S., Evidence, § 545, p. 306.

We conclude, that in view of the evidence and the authorities cited, sufficient foundation was laid to permit the witnesses to testify to the value of the stallion at the time of the exchange of the stallion for the mare.

The defendant contends that a statement of fact, the truth or falsity of which can only be determined by future events as in the instant case, is regarded as an opinion and not a warranty.

The evidence is in direct conflict. The plaintiff and his witnesses testified that the defendant guaranteed the mare to be with foal; the defendant and his wife testified that the defendant represented that the mare was bred and should have a fall colt.

Whenever the vendor, at the time of the sale, makes an assertion or representation respecting the condition of the thing sold, upon which he intends that the vendee shall rely, and upon which he does rely in making the purchase, or as in the instant case the exchange of horses, it amounts to a warranty. If, however, the vendor, by what he says, merely intends to express an opinion or belief about the matter, and not to make an affirmation of a fact, then the statement will not amount to a warranty. Where doubts exist upon the evidence whether the vendor intended to assert a fact, or merely express an opinion or belief, that question must be left to the jury to decide. See, Lamme v. Gregg, 1 Metc. (Ky.) 444; Tuttle v. Brown, 4 Gray (Mass.) 457; Richardson v. Mason, 53 Barb. (N. Y.) 601; Blair v. Hall, (Mo. App.) 201 S. W. 945.

A seller's positive statement or affirmation of fact as to the quality or condition made in the course of negotiations of sale and naturally importing that he intended to

bind himself to its truth, and which was so understood and relied upon by the buyer, would constitute a warranty. See McCurdy v. Aylor, 41 N. D. 187, 170 N. W. 523.

An express statement that a mare is with foal is a warranty, the breach of which is actionable. See Gee v. Lucas, 16 L. T. Rep. N. S. 357.

We conclude, under the evidence, that a question to be determined by the jury was whether or not there was a warranty on the part of the defendant, or merely an expression of opinion.

The defendant contends that the plaintiff, in seeking to rescind the contract, was obligated to do so within a reasonable time after discovering the breach, or within a reasonable time after the breach.

In this connection, the defendant argues that the plaintiff expressed doubt that the mare was with foal at the time the exchange of horses was made; that the plaintiff was acquainted with the normal period of gestation; and had testified that the mare was represented to be seven or eight months with foal; therefore, the plaintiff was aware that the colt would be born in September, or three months after he received the mare. He made no effort to rescind the contract, and gave no notice thereof until February 25, 1946, when he wrote the defendant and referring to the mare said: "I will deliver your mare back to your ranch and get our colt. * * * She never had any (colt) in her just as I expected from the start." Nothing further was done until in April 1946, when the plaintiff delivered the mare to the defendant's ranch. Therefore, the plaintiff did not, as a matter of law, rescind the contract within a reasonable length of time, in keeping the mare under such circumstances.

It is a general rule that the purchaser of a chattel who desires to rescind the contract of sale for fraud or breach of warranty must act promptly, and while the rule does not require immediate action on his part after discovery of the grounds warranting rescission, it does require him

to act within a reasonable time, taking all of the circumstances into consideration. See, annotation in 72 A. L. R. 729; Seiberling & Co. v. Brauer, 24 Neb. 510, 39 N. W. 591; Von Dohren v. John Deere Plow Co., 71 Neb. 276, 98 N. W. 830; Sedlacek v. Welpton Lumber Co., 111 Neb. 677, 197 N. W. 618.

The question as to what is a reasonable time for rescission of a contract is not an abstract question which can be answered merely by reference to a certain period of time, but depends on the particular circumstances, as the subject matter, the relation and location of the parties, their opportunities for communication, change in condition of the property or injury to the seller by delay, and any other factors which bear on the issue as to what should reasonably be expected or required. See annotation in 72 A. L. R. 749.

Since the question of what is a reasonable time for rescission by the purchaser of a chattel for fraud or a breach of warranty inducing the purchase depends on the facts of a particular case, and is frequently matter from which different conclusions may reasonably be drawn, it is well settled that ordinarily the question is one of fact for the jury (this proposition, it should be observed, does not depend on whether the facts are disputed, but is true even though the facts are conceded or undisputed, if different inferences may reasonably be drawn from them.) See, annotation in 72 A. L. R. 753; Von Dohren v. John Deere Plow Co., *supra.*

The fact that the plaintiff, at the time of the exchange of his stallion for the defendant's mare, expressed doubt as to whether or not the mare was with foal and retained and continued to retain the mare thereafter, will not preclude a rescission of the contract if such retention was actually necessary to a test as to whether or not the mare was in foal. The same principle is announced in Wilson v. Doolittle, 114 Kan. 582, 220 P. 508.

The record discloses, from the defendant's evidence, that at the time the exchange of horses was made the

mare was five or six months along. Computing the period of gestation, the mare could not have foaled until October, November, or December. The plaintiff, by letter, rescinded the contract about 60 days from the last period the mare could have delivered the colt. The distance between the plaintiff's home and the defendant's ranch was considerable, and it was during the winter period. The defendant had the stallion castrated in August 1945. It is apparent that the jury found that the defendant had warranted the mare to be with foal. This being true, the defendant had the stallion castrated before any right of rescission arose and before performance of the contract was due.

Whether one, seeking to rescind a contract on the ground that it was procured by fraud or duress, has acted with reasonable promptness is, ordinarily a question of fact and in a law action is for the jury to determine. See, Glatfelter v. Curtis, 130 Neb. 628, 266 N. W. 63; Arnold v. Dowd, 85 Neb. 108, 122 N. W. 680.

Under all of the facts and circumstances heretofore adduced, it was a question for the jury to determine whether or not the plaintiff rescinded the contract within a reasonable time. The trial court did not err in submitting the question to the jury under appropriate instructions which are not attacked.

The defendant counterclaimed for the care and feed of the mare from the time she was returned to him. The trial court did not submit the counterclaim to the jury, and the defendant predicates error upon the trial court's failure to do so.

The defendant alleged in his answer and contended by his testimony that the real party at interest was the plaintiff's daughter, that the exchange was made for her benefit, and that she was the owner of the stallion. By his own testimony he discounted the counterclaim and indicated that it was put in for the purpose of striking at the bill the plaintiff had against him, and, in fact, he did not expect to collect the amount. In the light of this

evidence, the trial court did not err in failing to submit the counterclaim to the jury.

For the reasons given herein, the judgment on the verdict is affirmed.

AFFIRMED.

CARTER, J., dissenting.

The failure of a party to perform a contract is not of itself a rescission; the other party must indicate an intention to rescind within a reasonable time. A right to rescind a contract must be exercised promptly on discovery of the facts from which it arises. It is fundamental in the law of rescission that one who pursues this remedy must restore or attempt to restore the consideration received from the other promptly after discovery of the breach. A failure by a party rescinding a contract to return the consideration retained by him within a reasonable time constitutes a waiver of his right to rescind, leaves the contract in force, and limits the remedy to an action for damages resulting from the breach.

The evidence in the present case shows full knowledge of the breach on or before December 1, 1945. No complaint was made until February 1946. The plaintiff did not return the mare until April 1946. I submit that plaintiff did not rescind within a reasonable time as a matter of law and that the trial court should have directed a verdict against him.

YEAGER, J., concurs in this dissent.