IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

EASTERN DISTRICT—PHILADELPHIA, 1889.

## A. L. HENNERSHOTZ v. A. J. GALLAGHER.

ERROR TO THE COURT OF COMMON PLEAS NO. 1 OF PHILA-
DELPHIA COUNTY.

Argued January 9, 1889—Decided January 28, 1889.

1. Where, of two agreements, made apart in time but relating to the
same subject-matter, each is complete in itself and contains no reference
to the other, in the absence of any ground laid of fraud, accident or
mistake, parol evidence is inadmissible to affect their legal construction
as distinct instruments.
2. In an action by the vendee to recover damages for the breach of a cov-
enant to convey land, where the plaintiff has not paid the purchase
money and no evidence is adduced that the land is of greater value than
the sum agreed to be paid, he can recover but nominal damages.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILL-
IAMS, McCOLLUM and MITCHELL, JJ.

No. 307 January Term 1886, Sup. Ct.; court below, No; 648
June Term 1878, C. P. No. 1.

In an action of covenant instituted on August 1, 1878; by
A. L. Hennershotz against A. J. Gallagher, the plaintiff's narr
set out two sealed agreements for the purchase and sale of real
estate. Of these agreements,

The first, dated October 2, 1876, was between A. L. Henner-shotz of the first part, and A. J. Gallagher of the second part, and recited the ownership of said Hennershotz of three several lots in West Philadelphia, except as to an undivided interest therein held by a minor, and witnessed that said Hennershotz agreed to sell, " upon the completion of the title to the said premises by the Orphans' Court aforesaid," and that the said Gallagher agreed to buy the said several lots, subject to certain mortgages, and to pay therefor the sum of $112,000, payable as follows: One note at four months for $5,000 ; " four farms in Noble and Washington counties, Ohio, containing seven hundred and sixty-three acres, as per deeds, at $100 per acre ; " certain articles of personalty; certain stock; and certain merchandise making up the balance of said consideration ; title papers for the lots to be submitted for examination, and the " note, farms, whiskey, horses, wagons, harness and stock, to be delivered as the title papers are pronounced perfect and marketable by the said Charles H. Masson conveyancer : title papers to the said farms to be placed in the hands of A. L. Hennershotz for examination, said farms to be clear of all incumbrances, and to be pronounced so by said A. L. Hennershotz."

The second contract, dated July 17, 1877, was between A. J. Gallagher of the first part, and A. L. Hennershotz of the second part, and witnessed that said Gallagher had sold to said Hennershotz " upon the conditions hereinafter mentioned " the several tracts of land described in certain deeds to said Gallagher, with the place of record thereof mentioned, containing in the aggregate seven hundred and forty-seven and two thirds acres more or less: " And the said Anthony J. Gallagher, for himself and his heirs, executors, and administrators, hereby agrees to convey the same free and clear of all encumbrances unto the said A. Lucius Hennershotz, his heirs and assigns, at any time within one year from the date hereof, for the consideration and upon the payment of the sum of $6,000, with interest thereon at the rate of twelve per cent per annum, from the date hereof until the payment of the same. And it is further agreed by and between the said parties, that in case the said A. Lucius Hennershotz, his heirs and assigns, should fail to take the said several premises within the time

and upon the terms above specified, then this agreement to be null and void; and the said Anthony J. Gallagher, his heirs and assigns, shall have and hold the said several premises free and discharged from any liability under this agreement."

Following the foregoing agreements, which were both set out in full and were unconnected with each other by internal reference, the narr proceeded to aver that the plaintiff had conveyed to the defendant the West Philadelphia lots and had fully complied with all his covenants in the first-mentioned agreement contained; that within the time limited and appointed for the same to be done, he had tendered to the defendant the sum of $6,000, with the stipulated interest, and had performed all his covenants in the last-mentioned agreement contained, yet the defendant had not conveyed to the plaintiff, but in bad faith, etc., had refused to convey to him the lands described in said agreement, etc.

The defendant pleaded, covenants performed, covenants performed absque hoc.

At the trial on May 11, 1885, the evidence adduced by the plaintiff was in substance, as follows:

When the plaintiff came to close his own purchase of the West Philadelphia lots, he found that it was necessary for him to pay more of the consideration in cash than his contract with the Bradley heirs, his vendors, called for. The defendant agreed to advance him the money, $6,000, which was the money mentioned in the agreement of July 17, 1877. The plaintiff testified: " The defendant loaned the $6,000 to me and gave me a year to repay. The $6,000 was paid over to the Bradley heirs. Defendant received the title to my properties in West Philadelphia. The title was accepted by the defendant and approved by Mr. Masson. I received all but the Ohio farms. The security I gave the defendant for the loan was the farms." He then proceeded to testify to efforts made to meet the defendant, to tender the $6,000 and interest, but that the defendant kept out of his way so that he did not meet him until April 17, 1878, when the defendant refused the money, saying he was too late. On cross-examination, the plaintiff testified: " I called it a loan from the defendant to me, because he loaned it on the security of the farms. We fixed $6,000, because he had advanced that amount."

The defendant testified, in his case in chief: "A short time before conclusion of first agreement, plaintiff said he needed money to carry it out. I said to him, Well, throw out the Ohio farms and I will give you in lieu of them $6,000. After it was settled, he said, Will you let me have the farms back? I said yes, if you will pay in a year the $6,000 and one per cent interest." He denied that he had avoided a meeting with the plaintiff when the latter wished to tender the money, and testified that plaintiff had come to him and asked for an extension of the time: "I replied, I wont extend. Plaintiff said, I wont take them. No tender of money."

Under objection and exception to plaintiff, the defendant put in evidence certain receipts for taxes for 1878, upon the Ohio lands. These receipts showed an assessed valuation of the lands of over $12,000.

At the close of the testimony, the court, BIDDLE, J., charged the jury as follows:

[Plaintiff contracted to sell the West Philadelphia lands to the defendant. The owner of part of the tract had died and the heirs of this decedent would not accept what the ancestor had agreed to take. Plaintiff then told the defendant that the transaction must fall through if he could not get about $6,000, which was necessary to pay off taxes and other incumbrances. The defendant said, I will advance $6,000 and we will drop the Ohio farms out of the bargain. This was done. Plaintiff then drew up another agreement to enable him to purchase the Ohio farms. This was an entirely new and distinct transaction, because it would be incredible, if the four farms were worth the $76,000 mentioned in the first agreement. In these bargains, however, it depends upon what you get in exchange, as a man may sell his horse for $1,000 and get two dogs valued at $500 each. Plaintiff was told that the whole rent of the farms was about $700, and it is therefore almost incredible that they thought them to be worth $76,000 in cash or its equivalent. After the first agreement had been fully completed, the second paper was made, by which the plaintiff was to purchase the farms for the price of $6,000.] [1]

Plaintiff said that he tendered the $6,000 after some difficulty in finding the defendant. The defendant denies this and says

Charge of Court below.

that plaintiff, so far from tendering the money, asked for more time. Mr. Dwyer swears also to this. Defendant said he refused another extension of time. Plaintiff admits that he asked an extension, but says it was in June. Of course, if the plaintiff made no tender during the year stipulated in the agreement, your verdict should be for the defendant. As to the tender, it is proper to say that it is the duty of the plaintiff to be prepared to make a full tender, and it was, therefore, plaintiff's duty to tender the whole amount that was due under the agreement; but if the defendant kept out of plaintiff's way after agreeing to meet him, he cannot take away plaintiff's rights by doing so; and, if one should refuse the tender on the ground that it was too late, before you produce the money to make the tender, he would afterwards not be permitted to say that the amount was not a true one. In this case the defendant denies that any tender whatever was made, and you must determine that fact under the evidence.

The next question is as to the damages. [The rule as to the damages is, what is the value of the land at the date the deed is to be delivered? An if you find that there has been no rise in value of the farms since the date at which the deed for the same should have been delivered, you should find a verdict for nominal damages, that is to say, for fifty cents or a dollar.] [3] [If the property appreciates, plaintiff can recover the difference in value; but if it depreciates, plaintiff is not injured, nor can he recover.] [4] [There is no evidence here to show in what or in how much the plaintiff was damaged, and, therefore, your verdict should be for nominal damages if you find a tender was made.] [5]

I am requested by plaintiff to charge:

If the jury find from the evidence that plaintiff faithfully carried out the agreements of October 2, 1876, and July 17, 1887, and that defendant fraudulently refused to convey to plaintiff the premises described therein, the plaintiff can recover the amount paid for said premises, less the $6,000 and interest, stipulated in said last agreement.

Answer: I decline to so charge. [2]

The jury returned a verdict in favor of the plaintiff for fifty cents. A rule for a new trial having been discharged, judg-

ment was entered upon the verdict, when the plaintiff took
this writ and assigned as error:

1. The part of the charge embraced in [ ] [1]
2. The answer to the plaintiff's point.[2]
3–5. The parts of the charge embraced in [ ] [3 to 5].

*Mr. Henry C. Terry* and *Mr. F. Carroll Brewster*, for the
plaintiff in error:

1. Separate writings on one piece of paper, or on several
attached pieces, or on separate papers referring one to another
or relating to the same subject, whether made simultaneously
or on different occasions or days, may be regarded as one con-
tract, when this view of them is just and accurate within the
intent of the parties, and whether so or not should be inter-
preted together: Bishop on Contracts, § 165; Sedgwick on
Damages, 368; Hertzog v. Hertzog, 34 Pa. 418; Graham v.
Graham, 34 Pa. 475; McNair v. Compton, 35 Pa. 23.   Where
successive written agreements between the same parties are
from their terms capable of being construed either as one
agreement or as two separate agreements, such a question is
one of intention, and when negatived and affirmed by the
parties and not determined by the writings, it is a question of
fact within the exclusive province of the jury: Connell v.
Todd, 2 Den. 133.

2. Under the charge of the court below, all the facts were
found by the jury in favor of the plaintiff.   The question of
the inability of the defendant to convey because of a defect in
his title was not raised or considered.   The jury also found
that a proper and legal tender of the amount due to the
defendant had been made by the plaintiff, and that the defend-
ant had fraudulently and wilfully refused to convey the
property as covenanted by him.   There was evidence of the
value of the Ohio farms.   In the first agreement that value
was fixed by the parties at $76,300.   The tax assessments were
upwards of $12,000, presumably as unproductive farm lands.
The facts being undisputed, the plaintiff had the right to
recover the difference between $76,300, the value of the farms,
and $6,000, the amount advanced by the defendant.

3. Where parties in their agreement of exchange stipulate
as to the value of the property to be thereby taken, " that

Arguments.

value, rather than the value which might be ascertained by evidence at the trial, will be adopted as the basis of recovery: " 2 Sutherland on Dam. 204–5, 262; Williamson v. Test, 24 Ia. 138; Burr v. Todd, 41 Pa. 213; 1 Sedgwick on Dam., 7th ed., 384; Richards v. Edick, 17 Barb. 260. "The principle, however [that in the absence of fraud nothing can be recovered for the loss of the bargain], is derived from the case of a vendor who sells in good faith and is unable to make a good title. In all such cases the vendee is not permitted to recover for the loss of a good bargain, but is confined to his actual loss in money, labor, or service performed on the faith of the contract. But there is another class of cases, where the vendor has not acted in good faith, or has been guilty of deception, when the vendee is permitted to recover also for the loss of his bargain: Meason v. Kaine, 67 Pa. 132. In these and all cases, when the inability arises from fraud in the covenantor, the purchaser should recover substantial damages: Sweem v. Steele, 5 Ia. 352; Lee v. Dean, 3 Wh. 330; King v. Pyle, 8 S. & R. 166; McNair v. Compton, 35 Pa. 23; 1 Sedgwick on Dam. 428.

4. The rule of Flureau v. Thornhill, 2 W. Bl. 1078, applies only where the vendor fails to convey because of inability to make title. If he have a good title and refuse to convey for any other reason, he will be liable in substantial damages: Engle v. Fitch, L. R. 3 Q. B. 314, 4 Q. B. 659; Allen v. Atkinson, 27 Mich. 351; Warner v. Bacon, 8 Gray 397; Pringle v. Spalding, 53 Barb. 17; Barbour v. Nichols, 3 R. I. 187; Western R. Co. v. Babcock, 6 Metc. 346; New Haven etc. R. Co. v. Hayden, 117 Mass. 433; Noyes v. Phillips, 60 N. Y. 408; Williams v. Glenton, L. R. 1 Ch. App. 200; Loomis v. Wedhams, 8 Gray 557; Nichols v. Freeman, 11 Ired. 99; Dougherty v. Dolan, 65 Me. 87.

*Mr. David W. Sellers*, for the defendant in error:

1. The agreement of July 17, 1877, was a distinct transaction. It refers in no way to the agreement of October 2, 1876; it is full to every point, and there is no allegation of any mistake or omission. It was therefore within the exclusive province of the court to characterize its legal nature and interpretation. No evidence was submitted to reform it, and if inferences are to be made that it means otherwise than its text,

they are to be disregarded as insufficient, according to the well established rules of law in this state as to written contracts: Rowand v. Finney, 96 Pa. 196; Boyd v. Breece, 3 Phila. 206, approved in Callan v. Lukens, 89 Pa. 136 ; Greenawalt v. Kohne, 85 Pa. 375; Sylvius v. Kosek, 117 Pa. 76 ; North and West Br. Ry. Co. v. Swank, 105 Pa. 555.

2. No evidence was given on the trial as to the value of the property, and the conduct of the parties shows that the value of the farms fixed in the first agreement was understood to be speculative, "an exaggerated swap." Whatever may be the rule in other states, there is no uncertainty in this state, as to the measure of damages on a refusal to convey, under the facts of this case.   The plaintiff at most was entitled to recover only damages equal to the loss actually sustained by the non-fulfilment of the contract: Burr v. Todd, 41 Pa. 206; Meason v. Kaine, 63 Pa. 339.   The case of Jack v. McKee, 9 Pa. 235, sustaining the rule existing elsewhere, that the loss of the bargain may be recovered, has been overruled in Hertzog v. Hertzog, 34 Pa. 418; Ewing v. Thompson, 66 Pa. 384.   As the plaintiff never paid anything for the farms, and as there was no fraud in the making of the agreement to convey them for the sum of $6,000, the damages were to be recovered only on the rule laid down by the trial judge.


OPINION, MR. JUSTICE MITCHELL :

The learned judge below was clearly right in holding the two agreements to be separate and distinct.   They were made more than nine months apart in time ; each is complete in itself and neither contains any reference to the other; even the lands which are the subjects of them are prima facie not the same, for, though in the same counties, they are described in the first as "four farms containing seven hundred and sixty-three acres," and in the second as "the several premises containing in the aggregate seven hundred and forty-seven and two thirds acres, more or less," and finally they were valued in the first at $76,300, and in the second at $6,000.   If it be conceded, as probably the fact was, that the lands referred to were the same in both, even then the learned judge might well say that it was "incredible" that the two agreements were intended to be but one and the same.

It being thus clear as a matter of law that the two agreements were separate and distinct, the evidence presented to show that they were in fact intended to be one, was entirely lacking in the essentials of clearness, precision, and convincing force, necessary to reform a written instrument. But this need not be discussed, as in the entire absence of any ground laid of fraud, accident or mistake, in the making of either agreement, parol evidence was not admissible at all to affect their legal construction.

The only question remaining is the measure of damages, and we have gone carefully through the bill of exceptions to see if there was any evidence upon which the jury should have been allowed to go beyond a nominal verdict. We do not find any.

Two items only could be pointed out by the counsel for plaintiff in his argument. First, the valuation put on the farms by the parties themselves in the first agreement. This agreement however was one for a trade. It dealt in very large nominal figures, of which only a trifling part was to be cash, the rest being a miscellaneous assortment of merchandise, and the Ohio farms, at a valuation of seventy-six thousand three hundred dollars. Yet, when in the second agreement the parties come to a cash valuation they reduce the figures to six thousand dollars. It is plain that the first agreement affords no competent evidence of the cash value of the Ohio farms.

Secondly, it is argued that the tax bills were evidence of value. We cannot so regard them. They had none of the essential elements of evidence. They were not under oath, were not shown to have been based on the actual cash value, or made by a person competent to make such valuation; nor, lastly, were they admissions against interest, which might dispense with the necessity of an oath. They were not offered as evidence of value, but to show certain expenditures to which defendant had been put and which plaintiff's tender should have covered, and they were admitted against plaintiff's objection, for that purpose alone. The resort to them as evidence of value is an afterthought which cannot be successful.

Juries cannot be allowed to guess at verdicts without legal evidence, and especially should the rule not be relaxed in a case where both parties were present on the witness stand, and

were silent when they could have given clear information if they had chosen to speak.

The only competent evidence of value really before the jury was the price stipulated by the parties in the second agreement, six thousand dollars, and as the plaintiff admitted that this not having been paid was to be deducted by the jury in making up their verdict, there is nothing left on which the jury could give more than nominal damages.

The judgment is affirmed.