BARTLESVILLE INTERURBAN RY. CO. v. QUAID.

No. 4821.    Opinion Filed September 14, 1915.

(151 Pac 891.)

1.    **EXCEPTIONS, BILL OF**—Exceptions to Instructions—Signing. To review the action of the trial court in giving instructions, it is necessary that the exceptions to the instructions as given be signed by the trial judge, as provided by section 5795, Comp. Laws 1909 (sec. 5003, Rev. Laws 1910).

2.    **EVIDENCE**—Opinion Evidence—Admissibility. It was proper to admit the opinion of a witness that the horse "seemed to be frightened," under the rule which admits opinions from necessity, such as in cases of identity.

3.    EVIDENCE—Admissions Against Interest—Assessor's Lists.  As-
sessor's lists are not admissible, as admissions against interest
as to value of property listed for assessment, where the issue as
to value is raised in a civil action between the owner and parties
other than the state.

(Syllabus by McKeown, C.)

*Error from County Court, Washington County;*
*James I. Shipman, Judge.*

Action by F. F. Quaid against the Bartlesville Inter-
urban Railway Company.  Judgment for plaintiff, and
defendant brings error.  Affirmed.

*George, Campbell & Ray,* for plaintiff in error.

*Pennel & Webster,* for defendant in error.

Opinion by McKEOWN, C.  The defendant in error,
F. F. Quaid, as plaintiff below, and who, for convenience,
will be called plaintiff here, brought this action against
the plaintiff in error, Bartlesville Interurban Railway
Company (hereinafter called defendant), for damages for
negligently killing plaintiff's horse on the 5th day of
January, 1912.  The issue at the trial of the cause was
whether the horse came to his death by reason of the negli-
gence of the motorman in omitting to stop said car, or
apply the brakes and lessen the speed of said car, after
said horse became frightened and started to run towards
defendant's track.

The facts, as they appear from the records, are that
on the morning of January 5, 1912, the plaintiff and his
son were each riding a horse along a road near the tracks
of the defendant company.  Both horses became fright-
ened at the car, and the horse ridden by the boy ran
towards the defendant's tracks, trying to cross the same.
The boy was pulling him back, trying to turn him from
the tracks; but the boy, discovering his peril, jumped off

the horse, and shortly thereafter the defendant's car struck and killed the horse.

There was a conflict of testimony as to how far away the street car was from the place on the track where the horse was struck, when the horse started to run towards the track. The testimony of witnesses for the plaintiff was to the effect that it was some 300 feet away. The motorman placed his car about 200 feet away when the horses became frightened, and about 100 to 125 feet away when the horse began to run "sideways." The motorman further testified that the horse backed into the corner of the car.

In the instant case there was ample evidence to go to the jury as to the failure of the motorman, in charge of the car, to do anything to slacken the speed of his car. Under his own testimony he was only traveling seven miles per hour, and could stop the car in 50 or 60 feet. The car knocked the horse some few feet from the track and ran past the horse several feet before stopping.

It is urged that the trial court erred in its instructions given to the jury. We are impressed with the exceeding brevity of the instructions, and we are inclined to the opinion that the trial judge evidently believed that:

"When one has no design but to speak plain truth, he may say a great deal in a very narrow compass."

However, we find that the plaintiff in error failed to have the trial judge sign the exception to this instruction, as required by section 5003, Rev. Laws 1910, so we pass the same without further consideration.

The plaintiff in error urges as ground for reversal the failure of the trial court to give instructions requested by it, and refused by the trial court. Only two of

the requested instructions show an exception to the action · of the court in refusing to give the same. The second requested instruction:

"You are instructed that the burden of proof is on the plaintiff to prove every allegation of his petition by a preponderance of the evidence"

—was properly refused because the burden was set out in the court's charge:

"Negligence on the part of the defendant is not presumed, but must be proved by a fair preponderance of the evidence"

—and the plaintiff had abandoned the allegation of failure to fence the right of way as a ground of recovery, and only one issue was being submitted to the jury, and that was whether or not the motorman used ordinary care in the management of the car after he discovered that the horse was going upon the track, and to give the instruction as requested, without explanation, would have been confusing to the jury, for the reason that the jury might be of the opinoin that the plaintiff had sustained the allegations of the petition as to the motorman's negligence, but had failed as to the fencing of the right of way, and because he had failed to sustain every allegation, he could not recover.

The defendant's requested instruction No. 3:

"You are further instructed that if the jury believe from the evidence that plaintiff's horse, which was killed, became unmanageable and in attempting to suddenly cross in front of the car backed against and came in contact with the car, the fact that the motorman did not stop the car, instead of proceeding slowly, does not warrant a finding that the motorman was negligent"

—is correct in part, and bad in part. The latter portion of the instruction was an invasion of the province of the

jury; and, not being a correct instruction in its entirety, the refusal of the court to give the same was not error. *Sanders v. Cline*, 22 Okla. 154, 101 Pac. 267.

It is next urged that the court erred in the admission of certain testimony of witness A. H. Peck, as follows:

"Q. Was he (meaning the horse) frightened at that time? A. He seemed to be frightened to me. Q. Do you know where the horse became frightened at first—where he started to run from? A. He seemed to be frightened as far as I could see him, 20 or 25 feet, as near as I could tell. Q. Was there a fence on either side of the railway right of way? A. No, sir. Q. How were they running this forenoon when they struck the horse? A. The same as they usually did, I reckon, as near as I can tell. Q. You have known what different horses sell for? A. Why, yes; I have seen a good many sold and bought along about that time. Q. State what was the reasonable market value of this horse. A. Well, I should say from $125 to $150, as near as I could judge about the horse."

The answer of the witness relative to the appearance of the horse was admissible, under the rule of necessity. Justice has long since demanded that the courts, in the trial of the truth of controversies, do so in keeping with the law and common sense. It would be absurd to exclude the statement of a witness to the effect that a person appeared to be healthy, because, forsooth, the witness was not a physician, and so on, example after example. In *Whittier v. Town of Franklin*, 46 N. H. 23, 88 Am. Dec. 185, the court said:

"The question, then, is whether the testimony of the witness that he saw in the horse no appearance of fright, and that he appeared rather sulky, comes within the rule which admits opinions from necessity; and this makes it necessary to determine whether the indications of fright

or of a sulky, obstinate, temper can ordinarily be so described to a jury as to enable them to make the proper inferences. If not, and experience shows that a man of common observation may ordinarily detect the existence of fright or a sulky temper, by marks and peculiarities of appearance that cannot be described, but which at the same time are reasonably reliable, then opinions, as in the case of identity, would be admissible."

Opinion of a witness that a horse was frightened is admissible. *Darling v. Westmoreland*, 52 N. H. 401, 13 Am. Rep. 55.

The testimony of the witness as to value of the horse was admissible. Chamberlayne on Evidence, vol. 3, sec. 2127.

"In the first place, the market value of domestic animals, such as horses, sheep, cattle, and hogs, is not such a subject as to be brought within the strict rule for receiving expert testimony. Values of this character are so easily and ordinarily understood that any one who knows should be permitted to testify. We can see no reason for it, nor any common sense, in applying the strict rules for expert testimony to testimony of this character." *(Midland Valley R. Co. v. Larson*, 41 Okla. 360, 138 Pac. 173.)

The rulings of the trial court in admitting the testimony of the witness, both as to the appearance of the horse and its value, were correct.

The plaintiff in error complains of the action of the trial court in excluding assessment lists of the plaintiff below, showing the value of horses listed for assessment for the years 1911 and 1912. The admission of such lists has been a subject of conflicting decisions. In this state it is the duty of the owner to list all of his property for taxation. The stress of the law is laid upon listing,

and not on valuation, by the owner; and the fixing of the valuation is the duty of the assessor. It is the duty of the assessor to require the owner to make a statement to him of the value, but the assessor may not place the value on the list at the amount stated by the owner; and it is often the common experience of the citizen that his opinion as to the value differs greatly from that of the assessor, but the opinion of the assessor in this particular prevails to the taxpayer's discomfort. Such lists are competent as a solemn declaration, under oath, as to whether certain property was listed, or was claimed by the taxpayer; but to admit said lists as an admission against the owner as to value of property listed would be to admit irrelevant evidence, for the reason that the statement when signed was made for the purpose of listing the property, and not for the purpose of fixing the value of the property. The owner at the time of listing the property is more or less biased, "consciously or unconsciously, on account of the financial penalty attached to placing a high valuation." Lawmakers for a century have cajoled and threatened taxpayers to procure true listings of personal property for taxation, yet the task has never been accomplished. If the courts add an additional burden by admitting the assessment lists as an admission against interest as to the value of the property listed, then the difficulties of the executive and legislative departments, in this regard, will be unsurmountable.

We are inclined to the opinion that the assessment lists were not admissible as admissions against interest as to the value of the horse. *Swaim v. Swaim*, 134 Ind. 596, 33 N. E. 792; *Randidge v. Lyman*, 124 Mass. 361; *Virginia, etc., R. Co. v. Henry*, 8 Nev. 165; *Suffolk & C. Ry. Co. v. West End Land & Imp. Co.*, 137 N. C. 330, 49

S. E. 350, 68 L. R. A. 333, 107 Am. St. Rep. 490; *Hennershotz v. Gallagher*, 124 Pa. 1, 16 Atl. 518.

Finding no error that warrants a reversal of this cause, we recommend that the judgment be affirmed.

By the Court: It is so ordered.