## GRAND RIVER DAM AUTHORITY v. THOMPSON et al.

No. 29471. April 9, 1940.

Rehearing Denied April 30, 1940.

*101 P. 2d 843.*

R. L. Davidson, of Tulsa, Q. B. Boyd-stun, of Vinita, Gayle M. Pickens, of Miami, and W. F. Speakman, of Vinita, for plaintiff in error.

Frank Nesbitt and Nelle Nesbitt, both of Miami, for defendants in error.

OSBORN, J. This action was instituted in the district court of Ottawa county by the Grand River Dam Authority, a public corporation, hereinafter referred to as plaintiff, against E. C. Thompson and L. Blanche Thompson, hereinafter referred to as defendants, wherein plaintiff sought to condemn certain real property owned by defendants. Russell Doss, county treasurer of Ottawa county, was also made a party defendant on the ground that there were certain unpaid taxes upon the property. From a judgment predicated upon a jury verdict fixing the value of the property and the amount of damages sustained by defendants in the taking of the property, plaintiff has appealed.

Plaintiff alleges that it is a public corporation organized under the authority of certain acts of the Oklahoma Legislature and possesses the powers of government for the public benefit; that it is authorized and empowered to control, store, and preserve the waters of the Grand river and its tributaries for any useful purpose; to develop, generate, and sell electric energy and to acquire by condemnation all real property necessary for the exercise of the powers granted by law. It is further alleged that plaintiff is constructing a dam and hydro-electric power plant near Pensacola, in Mayes county, and that it is necessary to acquire fee-simple title to all the lands in the basin or lake bed area below the meander line running on the 750-foot contour level, and that such meander line has been established and surveyed by the engineers of the plaintiff. It appears that defendants are the owners of a 40-acre tract of land described as: "East Half of the West Half of the Northeast Quarter of Section 29, Township 27 North, Range 24 East." Plaintiff alleges that it is necessary to acquire 28.48 acres of land out of the 40-acre tract owned by defendants; that it has made diligent efforts to acquire title to said land by purchase, but has been unable to do so. The prayer of the petition is that the court select commissioners as provided by law to find and determine the necessity for the condemnation of the tract of land and for authority to permit plaintiff to pay the amount of the award to the clerk of the court for the benefit of the owners and to take immediate possession of the lands, and for all other and further relief to which it may be entitled.

Commissioners were appointed and appraised the amount of damages at the sum of $8,000, and plaintiff filed demand for

jury trial. It appears that United States Highway No. 60 is adjacent to section 29, supra, on the north and on the east, and is used by defendants as a principal means of ingress and egress to and from their property to Miami and other points west, and to Wyandotte and other points south. During the course of the trial certain evidence was introduced with regard to the possibility that Highway No. 60 would be submerged by the waters of the lake, thereby destroying such ingress and egress. It appears that some doubt arose as to whether or not such evidence was admissible. After the court had indicated that evidence of damage on this theory would be excluded and not submitted to the jury, the parties entered into the following stipulation:

"By Mr. Davidson: In view of this situation, and the holding of the court, and without prejudicing the rights of either party to an appeal from any part of the judgment to the Supreme Court, it is agreed between the parties in this case that the two interrogatories may be submitted by the court to the jury, and that the Grand River Dam Authority be required to pay into court for the benefit of the landowners, or to them directly, the amount of damage fixed by the jury, in the event the road is left open, but the Authority will not be required to pay into court to obtain possession of the land, the difference, if any, between the damage fixed in the event the road is left open and the damage fixed in the event the road is closed, so long as an appeal may be pending from the judgment in this case.

"In (if) this case is not appealed, or the appeal abandoned the difference before referred to will be payable six months from the date of the judgment in this court.

"In case of an appeal and the judgment is affirmed the difference will be payable forthwith.

"By Mr. Nesbitt: That is all right.

"The Court: The stipulation will be approved by the court, and the case will be further tried upon that theory."

Following this stipulation, the court instructed the jury in this connection as follows:

"No. 9.

"In this case the court is requesting that you find the damage which the defendants have sustained, under the instructions herein given you, upon the theory that State Highway Number 60, running east and west by the defendants' premises, will not be blocked or impaired by reason of the construction of the Grand River Dam Project, and in the verdict and interrogatories submitted to you, you will fix that amount.

"You are also, likewise, requested to find the damage which the defendants have sustained, under the rules given you in these instructions, in case said Highway Number 60 is closed to traffic by reason of said project. You will also fix that amount.

"No. 10.

"In case Highway 60 is blocked or impaired, in considering the damage, if any, caused defendants thereby, you are instructed that the injury resulting from an obstruction in a public highway in front of an abutting owner's property, which interferes with his ingress and egress to and from his property, is a special injury to him, and although the obstruction be not in front of said property, if it be in such close proximity to said property upon said highway upon which said property abuts, so that the abutting owner's use and enjoyment of the property is destroyed or greatly interfered with and his said property value depreciated, this injury is special and peculiar to him, and such interference with ingress and egress may be considered by you in determining the amount of damages, if any, to the ten acres of the defendant's property not taken. (Excepted to by plaintiff; Exception allowed: Wm. M. Thomas, Judge)"

Thereafter the jury returned a verdict which is as follows:

"We, the jury empaneled and sworn in the above-entitled cause, do upon our oaths, find for the defendants, Earnest C. Thompson and Blanche Thompson, and fix the amount of their recovery in the event U. S. Highway Number 60 is closed to traffic as a result of the construction of the project at $7,650.

"We, the jury empaneled and sworn in the above cause, find for the defendants,

Earnest C. Thompson and Blanche Thompson, and fix the amount of their recovery in the event U. S. Highway Number 60 is not closed to traffic as a result of the construction of the project, at $6,650."

Plaintiff's first proposition for reversal is as follows:

"The verdict of the jury was based on speculation and conjecture as to the closing of Highway No. 60, and the reconstruction or relocation of Highway No. 60, was improperly considered as an element of damage herein."

Plaintiff's second proposition for reversal is as follows:

"The tax return made by the defendant, E. C. Thompson, should have been admitted in evidence to test the credibility of the witness and to impeach his testimony."

In connection with its first proposition, plaintiff urges that in view of the speculative nature of the damages resulting from the possible closing of Highway No. 60 in the future, this element cannot be considered in calculating the amount due the defendants in this action, and contends that defendants' remedy is to bring an action for damages if the highway is subsequently blocked and defendants are inconvenienced thereby.

Without deciding the propriety of such procedure, or determining the question of whether the defendants' remedy is to bring a separate action in damages, if and when the highway is destroyed, we are of the opinion that plaintiff has by entering into the above stipulation waived the right to question the procedure herein in that regard. As to plaintiff's first proposition, therefore, we determine only the question of whether the verdict of the jury was based upon speculation and conjecture. We revert to an examination of the record.

It is admitted that maps introduced in evidence were prepared by plaintiff's engineers, and that such maps show a 750-foot contour line where the waters of the lake are expected to be when the project is completed, and that the property involved herein will be within this contour line and eventually inundated by the water of the lake. It is not disputed that the highway will be inundated. Although plaintiff takes the position that the highway will be rebuilt, and defendants' right of ingress and egress to and from their property will not be destroyed, the only evidence upon this point is the testimony of R. V. L. Wright, plaintiff's manager, who was called as a witness for defendant, which is as follows:

"The Court: Just explain the status of the matter in your own words. A. The status of the matter is this: this Highway No. 60 will be under the contour. There are two bridges known as the Twin bridges which are low enough in their present location to interfere with the operation of the lake; some arrangements must be made for caring for that traffic. The matter is at present under study as to whether that arrangement should be made to relocate and reconstruct that highway in its present location, or to arrive at some other solution by rerouting that highway. Q. I will ask you if certain residents of the towns of Afton, Fairland and Wyandotte haven't met and consulted with you about the relocation of Highway No. 60 across that very place, and didn't you tell them that you had no plans for the reconstruction of that bridge? A. I did, yes, sir."

W. R. Holway, plaintiff's engineer, testified as follows:

"Q. Will that portion of Highway 60 laying to the west of the Thompson place and up to Spring river be covered with water? A. Yes, sir, everything below the 745 contour. Q. And on the same basis, will that portion of the lake due east of the Thompson place also cover Highway 60 where it turns south into Wyandotte? A. Yes, sir."

From the foregoing it will be seen that there is positive evidence that the highway will be inundated at the point in question, but it is conjectural as to whether the damage thus arising will be mitigated by a reconstruction of the highway, and it is equally conjectural as to whether the highway will be rebuilt in approximately its present location, if at all. There is no positive evidence that said highway will ever be reconstructed.

In the absence of any evidence that

the condemnor is under a binding agreement or duty to reconstruct the highway, the possibility that this may be done in the future cannot be considered. See 20 C. J. par. 227, p. 769.

In view of the foregoing, it follows that there was sufficient evidence to sustain the verdict of the jury assessing damages resulting from the destruction of the highway, in addition to the sum allowed for the taking of defendants' land.

Plaintiff's second proposition is bottomed upon the contention that the tax returns of defendant constitute a sworn statement which should be admitted in evidence to impeach the testimony adduced regarding the value of the premises. This question has been considered by this court several times. See Bartlesville Interurban Ry. Co. v. Quaid, 51 Okla. 166, 151 P. 891; Winemiller et al. v. Lorton, 121 Okla. 99, 249 P. 406; Champlin Refining Co. v. Donnell, 173 Okla. 527, 49 P. 2d 208.

In Bartlesville Interurban Ry. Co. v. Quaid, supra, the matter was discussed at length. In none of the cases has it been held that tax returns are admissible, but it is urged by plaintiff that the returns have not been presented as a matter of constituting a statement against interest to impeach the testimony of the party who signs such returns under oath, and further argues that plaintiff is a governmental agency created for the purpose of conducting a state function (Sheldon v. Grand River Dam Authority, 182 Okla. 24, 76 P. 2d 355) and should come within the exception stated in the cases cited, supra; that such returns will not be admitted in actions between the owner and parties *other than the state.*

As was said by this court in Bartlesville Interurban Ry. Co. v. Quaid, supra, the stress of the law is laid upon listing and not on valuation, by the owner; and the fixing of the valuation is the duty of the assessor. The oath is prescribed by section 12596, O. S. 1931, 68 Okla. Stat. Ann. § 104. The return in question was signed on the 11th day of January, 1939.

Section 3, chapter 115, S. L. 1933, p. 244, provides:

"The county assessor of each and every county in the state shall, on the first day of January of each year, or as soon thereafter as may be practicable, proceed to take a list of all taxable property in the county and shall assess the value thereof as of January first of each year, in the following manner, to wit: * * *"

From the foregoing it will be seen that the statement of the taxpayer upon such a return is that he has correctly listed all property as provided by law. The county assessor and the county board of equalization fix the value thereof. The return is, therefore, not a statement against the interest of the taxpayer as to the value of the listed property, and cannot properly be admitted in evidence to impeach the testimony of the taxpayer regarding the value of such property. As to the statement in the cases cited making an exception where the state is a party, it appears that this exception applies to litigation arising under the tax collecting procedure, and has no application to a situation such as is here considered.

The judgment of the trial court attempted to comply with the agreement of the parties in the submission of said cause, and said judgment is in the alternative, predicated upon the two forms of verdict, being $7,650 in the event U. S. Highway No. 60 is closed, and $6,650 in the event U. S. Highway No. 60 is not closed. This was irregular, but under the circumstances hereinabove set forth, we do not deem it reversible. The record discloses that the sum of $6,650 has been paid into court, leaving unpaid only the difference between said sum and the larger verdict above mentioned. The judgment of the trial court will, therefore, be affirmed, but with directions to correct said judgment by the rendition of judgment for the sum of $1,000 with interest from the 23rd day of March, 1939.

Judgment modified, and, as modified, affirmed.

BAYLESS, C. J., and CORN, GIBSON, HURST, DAVISON, and DANNER, JJ., concur. WELCH, V. C. J., dissents. RILEY, J., absent.