## PHILLIPS PETROLEUM CO. et al. v. MALONE et al.

No. 26587. Feb. 23, 1937.

Rehearing Denied March 23, 1937.

Arrington & Evans, R. H. Hudson, and Rayburn L. Foster, for plaintiffs in error.

Goode, Dierker & Goode, for defendants in error.

PHELPS, J. The plaintiffs recovered a verdict and judgment of $1,500 for damage to their land, caused by the escaping and burning of oil from a pipe line. The defendants appeal, urging three propositions on the question of liability, and three on the question of damages. Having arrived at the conclusion that the former are not of sufficient merit to cause a reversal, and

the defendants having stated in their brief that "the only substantial controversy in this case was the amount of damages," we shall direct our attention to the propositions involving damages.

The defendants were of the opinion that the jury should be permitted to view the premises involved in the action, and so see for themselves whether the plaintiffs' land had been damaged or the trees burned as severely as claimed by the plaintiffs. They assign as error the refusal of the trial court to grant their request that the jury visit the premises. There were several reasons why the trial judge denied the request, one of them being that several years had elapsed between the tort complained of and the time of the trial. This may or may not have been a sufficient reason, depending upon the facts of the case. Be that as it may, the visitation was not a matter of right in either party to the lawsuit, this being within the discretion of the trial judge (section 361, O. S. 1931), whose ruling thereon will not be cause for reversal in the absence of a showing of abuse of discretion (Champlin Refining Co. v. Donnell, 173 Okla. 527, 49 P. (2d) 208); and we have not been convinced that there was an abuse of discretion in this instance. We notice, however, that, the measure of damage concededly being the difference in market value of the land immediately before and immediately after the soaking thereof with oil and the burning thereof, considerable change may have taken place by the date of the trial, and if such were the case, the jury would not have received a true picture of the actual condition as it existed immediately after the escaping of the oil or the burning of portions thereof.

The defendants also assert that the trial judge erred in excluding the tax assessment affidavit of the plaintiff P. B. Malone, for the years 1933 and 1934, wherein he had stated the value of the property in question to be a smaller figure than that claimed by him and his evidence in the trial of the case. We have repeatedly held that assessor's lists are not admissible as admissions against interest as to the value of property listed for assessment, where the issue as to the value is raised in a civil action between the owner and parties other than the state. Bartlesville Interurban Ry. Co. v. Quaid, 51 Okla. 166, 151 P. 891; Winemiller v. Lorton, 121 Okla. 99, 249 P. 406; Champlin Refining Co. v. Donnell, 173 Okla. 527, 49 P. (2d) 208.

The remaining proposition is that the trial judge erred in excluding the testimony of defendants' claim agent and adjuster, to the effect that on a certain occasion prior to the filing of the action when the witness visited the plaintiffs' farm and was there going over the question of damages with one of the plaintiffs, said plaintiff stated his damages to be a certain amount and gave the witness certain figures he would be willing to accept as to each of the items comprising the damages. It is evident that the trial judge excluded this offered testimony because of the fact that he believed the statements were made by the plaintiff to the witness during negotiations for a compromise, and with the idea of an amicable settlement in view. It appears that prior to the filing of the action the plaintiff had exchanged correspondence with the defendants' claim agent and adjuster; that the adjuster had written him that he would visit plaintiff for the purpose of settling the case, and for the plaintiff not to place the case with an attorney, because it could be adjusted, or words to that effect. These letters were used in the courtroom, and were identified by the plaintiff while testifying, but were not introduced in evidence. However, the trial judge was familiar with the contents of those letters, they having been introduced during a former trial of the case. The following questions by plaintiffs' attorney to the adjuster who was testifying at the time, and prior to the ruling excluding the evidence, and the answers to such questions, when considered in connection with the aforementioned letters, are significant:

"Q. Was he trying to get you to settle for these damages there at the time of that conversation? A. You say was he trying to get me to settle with him? Q. Yes, sir. A. That is what I came down for, to try to make a settlement. Q. That is what you were there for? A. Yes, sir. * * * Q. And on the basis of those figures he made you an offer of settlement? A. Yes, sir. Q. And that was rejected? A. Yes, sir. * * * And I again asked him what he had in mind he wanted for a settlement."

Statements of a party as to the amount of his damages, made voluntarily and disconnected from the idea of thereby obtaining a settlement, should be admitted in evidence. But when such statements are made in the course of an attempted settlement, it is often the case that they are made more from the motive of reaching an amicable compromise than from any other motive. Each party is inclined to overvalue his own damage or underestimate his opponent's damage, in the beginning of the negotiations; and then finally, in the hope of reaching an

agreement, make statements or propositions to the other party which do not reflect his true belief as to the amount of damage suffered so much as they indicate what he would be willing to accept or pay in order to avoid litigation. In the instant case the very purpose of the meeting between the defendants' claim agent and the plaintiff was "to try and make a settlement." The spirit and atmosphere of compromise pervaded the occasion. It was not as if the plaintiffs had voluntarily presented the defendants with a claim bill stating their damage; the statements here were made entirely with a view toward settlement, at the defendants' own request. As stated by us in C., R. I. & P. Ry. Co. v. Forsythe & Templar, 56 Okla. 26, 28, 155 P. 851, quoting from Sir John Romilly:

" 'Such communications made with a view to an amicable arrangement ought to be held very sacred, for, if parties were to be afterwards prejudiced by their efforts to compromise, it would be impossible to attempt any amicable arrangement of differences.' "

To hold otherwise would discourage parties from freely discussing their respective claims with each other, thus making it difficult to reach an agreement, and would furthermore discourage their getting together in the first place, for the discussion of such subject. We think the trial judge was commendably correct in his appraisal of the situation, and was warranted in his exclusion of this evidence from the hearing of the jury.

The judgment is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and RILEY, WELCH, CORN, and HURST, JJ., concur. GIBSON, J., dissents. BUSBY, J., absent.