**H. D. YOUNGMAN CONTRACTOR, Inc. v. GIRDNER.**

No. 35384.

Supreme Court of Oklahoma.

Oct. 6, 1953.

Rehearing Denied Nov. 3, 1953.

694

J. A. Rinehart, El Reno, Jean Reed, Stilwell, for plaintiff in error.

J. Fred Green, Sallisaw, E. B. Arnold, Stilwell, for defendant in error.

O'NEAL, Justice.

This is an appeal from the District Court of Adair County, in which Barney Girdner was plaintiff, and H. D. Youngman Contractor, Inc., was defendant. The plain-

tiff, Barney Girdner, recovered a judgment against the defendant, and from the order denying defendant's motion for a new trial, it appeals.

The parties will be referred to as they appeared in the trial court.

Plaintiff was the owner of 240 acres of land in Adair County, Oklahoma, and was engaged in farming the land and raising livestock; that he normally maintained three hundred head of cattle, besides hogs and horses, upon the land. There were five water wells located upon the land; one of which was an artesian well which furnished a constant and adequate supply of water for his livestock; that three of said wells had maintained a water level of six feet from the surface of the earth for many years prior to the injury complained of; that in the construction of U. S. Highway No. 59, at a point on said highway which passes near the location of said wells on plaintiff's property, the defendant used dynamite and other high explosive substances for the purpose of making a ditch along-side the highway on the said right of way of said highway, and that said explosives and blasting caused the rock formation under plaintiff's land to crack, give away in such a manner that the water in the three wells mentioned, which stood at the level of approximately six feet from the surface of the earth, to sink and go down to such a point it is impractical to draw water from said wells and destroyed their usefulness to plaintiff and caused the artesian well to stop flowing. It is asserted that thereby plaintiff's water supply was permanently destroyed and his land permanently damaged in value in the sum of $6,000.

Defendant's answer admitted that it did certain construction work upon the highway, but denied that plaintiff's water wells were injured by reason of said construction work. Defendant argues for a reversal of the judgment upon the following grounds:

(1) Contrary and inconsistent statements of a witness are admissible for impeachment purposes.

(2) Witness having testified that he has no knowledge of subject matter disqualifies himself on that subject and cannot there-

after testify as to any matter requiring such knowledge.

(3) The court erred in ruling that the damages were for permanent injury to the land rather than temporary, and the damage assessed by the jury in the sum of $3,000 was excessive under the evidence.

Whether one or more of these asserted grounds are sufficient to reverse the case requires an examination of the evidence in the record.

On February 27, 1950, the defendant was engaged in road construction work which necessitated the use of explosives in blasting a rock formation near plaintiff's land and in the immediate vicinity of an artesian well thereon. Plaintiff had acquired title to the land in January, 1948, through a conveyance from the State of Oklahoma. The State, during its ownership of the land, had dug five deep wells thereon, some of which flowed continually as springs and one was an artesian well. The day after the blasting upon the highway, the artesian well ceased to flow and has not flown since. Plaintiff's cause of action is based on the theory of a permanent injury and damage to the land by reason of the loss of his water supply.

▆▆▆▆ Defendant here contends that the court erroneously excluded defendant's proffered evidence that the plaintiff rendered his land for assessment for taxation for the year 1948, at a much lower figure than he claimed its value to be upon his direct examination. In excluding the proffered evidence the trial court said:

"What he assessed it for wouldn't be competent evidence. The question is what was the fair market value of the land with the flowing well on it before and after. On cross examination you can ask him what he paid for it but not what he assessed it for."

This ruling of the court was correct. Bartlesville Interurban Ry. Co. v. Quaid, 51 Okl. 166, 151 P. 891, L.R.A.1918A, 653; Phillips Petroleum Co. v. Malone, 179 Okl. 449, 66 P.2d 5; Cortez Oil Co. v. State, 179 Okl. 195, 65 P.2d 171.

▆▆▆▆ Neither do we think that the profferred evidence was admissible on the

696

theory of impeachment of the witness. The plaintiff having testified that he purchased the land from the State of Oklahoma for the sum of $9,200, and further testified that its present fair market value was $12,000, the defendant sought by cross-examination of the plaintiff to establish the asssessment return as filed in the office of the County Assessor covering the ad valorem taxes assessed against the land. This proffer was made as claimed by the defendant for the purpose of the impeachment of the witness as to the fair market value of the land. This, he cannot do.

In Grand River Dam Authority v. Thompson, 187 Okl. 129, 101 P.2d 843, a like contention was made and disapproved upon the authority of our former opinions in Winemiller v. Lorton, 121 Okl. 99, 249 P. 406; Champlin Refining Co. v. Donnell, 173 Okl. 527, 49 P.2d 208, 103 A.L.R. 157.

Defendant's second contention is that the court erred in permitting the plaintiff to testify as to the value of his land without first making proof that plaintiff was competent to testify as to land valuation in his community. The following question was propounded to the plaintiff: "Q. What was the reasonable, market value of that land with the artesian well on it just before the level of water in the well sunk and it ceased to flow?"

An objection was made by the defendant that the witness was not shown to be qualified to testify. The Court, overruling the objection, stated: "The owner can testify as to its market value without any special qualifications being shown." The witness then answered that the land was worth $12,000 prior to the damage to his water supply, and that the reasonable, market value of the land after the destruction of the water supply was $6,000.

In 20 Am.Jur., Evidence, § 892, it is stated:

"It is generally recognized that the opinion testimony of the owner of property, because of his relationship as owner, is competent and admissible on the question of the value of such property, regardless of his knowledge of property values. It is not necessary to show that he was acquainted with the market value of such property or that he is an expert on values. He is deemed qualified by reason of his relationship as owner to give estimates of the value of what he owns. The weight of such testimony is, of course, affected by his knowledge of the value."

Moreover, there is evidence of other witnesses as to the value of the land before and after the injury and damage here complained of.

The witness, Joe Neff, living in the same community as the plaintiff, testified that he knew the reasonable, market value of the land in that area and placed a value on plaintiff's land, prior to the destruction of the artesian well, at $10,000 to $12,000, and that its value without this water supply was about half of that amount.

In Wichita Falls & N. W. Ry. Co. v. McAlary, 44 Okl. 326, 144 P. 583, we held:

"The question of opinion evidence as to the value of farm property does not ordinarily involve a question of science or skill upon which only an expert possessed of technical training can speak. But ordinarily where the value of farming lands is an issue, intelligent persons living in the vicinity of the property involved, who are acquainted with the market value of similar property in the locality, and of the particular property in question, may give their opinion as to its value."

This principle of law was reaffirmed in Maley v. Henley, 195 Okl. 51, 154 P.2d 970.

Lastly, defendant contends that the court erred in submitting the case to the jury on plaintiff's theory that the damages to plaintiff's land were permanent, rather than a temporary damage. It is asserted that the damage is temporary if the property destroyed can be repaired or replaced. We may concede the premise but we fail to find any evidence in the record that plaintiff's water supply can be restored by the expenditure of labor or money.

The court's instruction properly advised the jury that if they found that the defendant set off the explosion near plaintiff's artesian well, and that said explosion caused said well to cease to flow, and that said explosions were the direct, natural and proximate result of the injury and damage alleged, then plaintiff's recovery should be measured by the difference between the fair market value of the land prior to and immediately after plaintiff's artesian well water supply was totally destroyed. No objection was taken to this or other of the court's instructions, and no complaint is here made that the evidence does not reasonably support the verdict and the judgment rendered thereon.

We therefore affirm.

HALLEY, C. J., JOHNSON, V. C. J., and WELCH, CORN, WILLIAMS and BLACKBIRD, JJ., concur.