Patricia W. **BINGHAM**, Plaintiff-Appellant,

v.

Russell **BRIDGES**, a/k/a Leon Russell, Defendant-Appellee.

No. 78-1379.

United States Court of Appeals, Tenth Circuit.

Argued Nov. 30, 1979.

Decided Jan. 18, 1980.

Paul E. Garrison, of Garrison, Pigman, Comstock & Thurston, Tulsa, Okl., for plaintiff-appellant.

Mike Barkley, of Hall, Estill, Hardwick, Gable, Collingsworth & Nelson, Tulsa, Okl., for defendant-appellee.

Before SETH, Chief Judge, McKAY and LOGAN, Circuit Judges.

McKAY, Circuit Judge.

This is an action to recover damages for breach of an oral contract to convey an interest in real property. Because such oral contracts are not enforceable in Oklahoma, the plaintiff attempted, under a theory of unjust enrichment, to recover the amount by which her efforts increased the value of the property. A trial to the court resulted in a judgment for plaintiff in the amount of $6,041.66. Plaintiff has appealed.

The sequence of events that led to this lawsuit, as found by the trial court, is essentially as follows. The defendant owned a parcel of Oklahoma property which was expensive to maintain and in a state of disrepair. In May 1976, he entered into an oral agreement with plaintiff to develop the property as a senior citizens' retirement center. The plaintiff was to receive a salary for managing the center. The agreement provided that, after the property began operating on a profit-making basis, defendant would convey to plaintiff a one-half interest in the property for $100,000, and plaintiff would receive fifty percent of the profit derived from the operation of the center. At plaintiff's option, she could apply her monthly salary and her share of the profits toward the purchase price. The agreement provided other details, but notably lacked any provision for, among other things, profit calculation or loss allocation.

Plaintiff, her in-laws and hired help worked on cleaning and repairing the property. The trial court made specific findings as to the value of materials, labor and other expense attributable to plaintiff which increased the value of the property. The sum of those figures equals the judgment granted. The trial court concluded that the value of the services performed by the plaintiff and her mother-in-law were not established with any reasonable degree of certainty. The court also found that plaintiff and her in-laws continued to receive the benefit of residing at the property to the date of trial and that there was no reasonable possibility that the proposed retirement center would have ever operated at a profit. The trial court found that, approximately seven months after the agreement was entered into, defendant conveyed the property to Oral Roberts University as a charitable gift with a fair market value of $393,950.

Since plaintiff's theory was unjust enrichment, she had the burden of establishing the amount by which the value of defendant's property was enhanced by her uncompensated efforts. That task traditionally may be accomplished by a variety of evidentiary methods. The most direct and perhaps most common method is by testimony of an expert as to the amount by which plaintiff's efforts enhanced the value of the property. Plaintiff chose not to employ this method.

Another method is to show the value of the labor and materials supplied by plaintiff and that the resulting property value has been increased by at least the value of the labor and materials. Plaintiff presented evidence of this type, part of which was accepted by the trial court as the proper measure of enhanced value.

■ A third common method of proof is to show the value of the property before and after plaintiff's efforts. The difference, less the amount attributable to any other factors which might have contributed to the increase, constitutes proof by inference of the value contributed by plaintiff's efforts. Normally the terminal values are established by expert appraisals. However, fair market value may be established by the testimony of the owner. *See H. D. Youngman Contractor, Inc. v. Girdner*, 262 P.2d 693, 696 (Okl.1953). Plaintiff put her primary emphasis on this method by offering what she argued were defendant's own appraisals of the pre-improvement value in lieu of expert testimony.

■ The trial court accepted $393,950 as the value of the land at the time of the charitable gift. Plaintiff attempted to show that the pre-improvement value was $200,000. The difference of nearly $200,000 is the amount plaintiff claimed her labor and materials enhanced the property. The court concluded, however, that plaintiff had failed to carry her burden of establishing the pre-improvement value or that her effort, rather than some other factor, was the source of the difference in value. In essence, the trial court concluded that plaintiff had failed to carry her burden of proof

as to the terminal values method but that she had in part carried her burden of proof when measured by the value of goods and services supplied method. It is the rejection of plaintiff's attempted proof by the terminal values method which burdens this appeal.

The only evidence purporting to show the fair market value of the property at the time of the oral agreement was the defendant's offer to sell a one-half interest in the property to plaintiff for $100,000 and the following interrogatory and answer:

Interrogatory no. 1: What monetary value did you place on the lake property on May 1, 1976?

Answer: Defendant unsure as to what plaintiff means by "monetary value." Solely in order to determine depreciation for income tax purposes defendant's accountant had placed a value of approximately $200,000 on the lake property on or about May 1, 1976. On or about May 1, 1976, the defendant felt the lake property had a fair market value, subject to appraisal, of $200,000 and assumption of the existing indebtedness on the property.

Record, vol. 4, at 293.

The trial court admitted both of these items of proof over objections of the defendant. However, in its conclusions of law, the court held:

12. The price at which defendant agreed to sell a one-half interest in the lake property to plaintiff, subject to the existence of a profit-making retirement center and payment of the mortgage indebtedness, is not proper evidence to be considered in determining the fair market value of the lake property on May 19, 1976.

13. Defendant was not qualified to give an opinion of the fair market value of the lake property, and his statements as to its value are not sufficient to establish its fair market value as of May 19, 1976.

14. Even if defendant were competent to testify as to the "reasonable" value of the lake property on May 19, 1976, the

Court finds it incredible that plaintiff's efforts increased the value of the property by almost $200,000.00. The Court therefore finds that both the defendant's statement of the value of his property and the price contained in the agreement between the parties are insufficient to establish any "reasonable" value of the property as of May 19, 1976.

15. There being no competent evidence of the fair market value, or "reasonable" value, of the lake property as of May 19, 1976, a recovery based upon either of those values would be purely speculative and cannot be allowed.

16. The reasonable value of the benefit received and retained by defendant as a result of plaintiff's efforts and expenses is $6,041.66.

17. Because there was no evidence presented as to the reasonable value of the use and occupation of the lake property, plaintiff is entitled to a judgment against the defendant in the amount of $6,041.66.

Record, vol. 1, at 125–26 (citations omitted).

After the court entered its order, plaintiff filed a motion asking the court to amend its findings of fact and conclusions of law to reflect that defendant's offer to sell is "competent evidence to be considered in determining the fair market or fair reasonable value of the lake property on May 19, 1976," and that defendant's answer to the interrogatory be considered "competent evidence tending to prove the reasonable value of the lake property." Record, vol. 1, at 130.

The court denied plaintiff's motion, reaffirming its position that the statements were not "competent evidence" which could be used against the defendant to establish the value of the property. The court then explained:

> In any event, as the Court held in its Findings of Fact and Conclusions of Law, even if the defendant were competent to give an opinion as to the value of the lake

property under these circumstances, the statements made were conditional and, if taken at face value, were so incredible as to be disregarded.

Record, vol. 1, at 138.

A careful review of the court's findings of fact and conclusions of law, particularly in light of the order denying plaintiff's motion to amend, satisfies us that the court refused to accept the proffered evidence as sufficient to establish fair market value on three independent, alternative theories: (1) the evidence was legally incompetent and inadmissible to prove fair market value; (2) although technically competent and admissible, the proffered statements of defendant were not sufficiently firm appraisals to support a finding of the pre-agreement value; and (3) even if competent, the evidence was incredible and unbelievable (or at least unbelieved).

■ The court's first alternative ground is probably incorrect under Oklahoma law. *See H. D. Youngman Contractor, Inc. v. Girdner*, 262 P.2d 693, 696 (Okl.1953). The second alternative is probably sustainable on the facts of this case. In Oklahoma offers to sell are deemed to be competent but not conclusive evidence of value. *Cf. Minick v. Rhoades Oil Co.*, 533 P.2d 598 (Okl.1975); *City of Pauls Valley v. Pruitt*, 316 P.2d 160 (Okl.1957); *H. D. Youngman Contractor, Inc. v. Girdner*, 262 P.2d 693 (Okl.1953); *Herron v. Spencer*, 204 Okl. 481, 231 P.2d 691 (1951); *City of Enid v. Moyers*, 196 Okl. 470, 165 P.2d 818, 173 P.2d 419 (1946); and *Thompson v. Boydstun*, 189 Okl. 530, 118 P.2d 236 (1941). The seven month disparity in purported values is such that the court could reject this evidence as not persuasive. In any case, the court's third alternative ground is clearly within the law and the evidence.

■ The trial court was by no means irrational in concluding that the goods and efforts supplied by the plaintiff could not remotely improve the value of the property by nearly $200,000.[1] As the trier of fact,

---

1. On appeal plaintiff has proffered an alternative valuation theory which would add a mort-

gage of approximately $150,000 to the purported May valuation leaving a difference in termi-

the court had the responsibility to weigh the credibility of the evidence. It is obvious from the orders of the court that it did not find the evidence relative to fair market value credible and accordingly rejected the evidence. At the very least, the court acted within the limits of the evidence in concluding that plaintiff did not carry her burden of proof in establishing fair market value by terminal appraisals with sufficient certainty to justify a verdict. Accordingly, the court adopted the only theory which plaintiff properly established, the value of goods and services supplied. Because these conclusions are within the court's discretion and are supported by the record, we affirm the holding of the court below.

nal values of nearly $44,000. Our review of the record does not suggest that this valuation theory was urged on the trial court. Nevertheless, the court here obviously did examine alternative theories of valuation; the judgment

amount reflects the independence of the court's determination. We do not impose on a trial court an obligation to reject specifically each of the many imaginable views of the evidence.