**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 23, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JERRY MCDONALD; NIKKI
MCDONALD,

        Plaintiffs,

  v.

NORTH AMERICA SPECIALTY
INSURANCE COMPANY;

        Defendant-Third-Party-
        Plaintiff-Appellee,

v.

FARRELL COOPER MINING
COMPANY, a foreign corporation,

        Third-Party-
        Defendant-Appellant.

No. 06-7045
(D.C. No. CIV-05-065-SH)
(E.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY**, **BALDOCK**, and **MURPHY**, Circuit Judges.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

In this diversity subrogation action, Defendant Farrell Cooper Mining Company appeals from a district court order that denied its post-trial motion for judgment as a matter of law. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## BACKGROUND

In 2005, Jerry and Nikki McDonald sued their insurer, North American Speciality Insurance Company, in federal court in Oklahoma for failing to pay benefits after their two poultry houses were damaged. North American impleaded Farrell Cooper, alleging that its mining activities had caused the damage. After North American paid the policy limits to the McDonalds and the McDonalds dismissed their claims, North American sought subrogation against Farrell Cooper.

In the pretrial order, the parties agreed on several issues, including whether Farrell Cooper's blasting had damaged the McDonalds' poultry houses. North American attempted to identify as an issue whether "Farrell Cooper [is] responsible on a theory of ultrahazardous activity." Aplt. App., Vol. 1 at 80. Farrell Cooper objected, however, stating that North American had pled only negligence. Additionally, North American and Farrell Cooper stipulated that North American's payment of $205,000 "was reasonable for the damages incurred" to the houses and for the McDonalds' lost income, and "that the costs to re-build both poultry houses [exceeded] the sum of $275,000.00." *Id.* at 79. The

-2-

parties also noted that the fair market value of the poultry houses remained an issue for trial. After empaneling a jury, the district court announced the parties' monetary stipulation.

During North American's case-in-chief, Mr. McDonald testified that the poultry houses were on his 120-acre farm, together with a residence, an old barn, and two "out buildings." *Id.*, Vol. 2 at 278. One of the poultry houses was insured for $90,000 and the other for $80,000, as recommended by insurance agent Jerry Pitchford, who procured an insurance policy from North American after inspecting the poultry houses.

Before Farrell Cooper began blasting near the farm, it had White Industrial Seismology, Inc. (WIS) inspect for any preexisting property damage. WIS reported no significant damage to the poultry houses. Additionally, the Britt/Paulk Insurance Agency inspected the poultry houses before Farrell Cooper's blasting and reported that the superstructures' columns were plumb, had good base contact, and were not buckling, corroded, or missing bolts. Both Mr. McDonald and Mr. Pitchford testified that prior to blasting, the poultry houses' walls and columns were not leaning.

Farrell Cooper began blasting in June or July 2003, roughly two to three hundred feet from the poultry houses. After it stopped blasting in October 2003, Mr. McDonald noticed that the poultry houses were leaning and he became concerned that they would collapse. He contacted Mr. Pitchford, who observed

that the houses were now leaning away from the blast cite.  In a "Property Loss Notice," Mr. Pitchford wrote, "Blasting from a Local mine has caused the poultry barns to basically fall in on themselves."  Aplee. Supp. App. at 12.

Civil structural engineer John Lawrence testified as an expert for North American.  He opined that the damage to the poultry houses was most likely caused by Farrell Cooper's blasting.  Farrell Cooper's mining superintendent testified that the blasting was accomplished using a total of 1,300 tons of ammonium nitrate, which was roughly 600 times more ammonium nitrate than was used in the 1995 bombing attack on the Alfred P. Murrah Federal Building.

After North American rested, Farrell Cooper moved for judgment as a matter of law, arguing, among other things, that (1) there was no evidence of negligence, causation, or the poultry houses' fair market value; and (2) Lawrence did not rule out possible alternative causes of the damage, such as wind.  The district court denied the motion.

Farrell Cooper then offered the testimony of a certified blaster, who indicated that there were "forty-five or more actual blasts," generating "different waves of vibration" instead of "one huge wave," Aplt. App., Vol. 2 at 538, and that an open pit on the farm reduced the amount of ground vibration, *id.* at 542. Farrell Cooper also offered the testimony of a professional engineer, who concluded that "vibration from the blasting had nothing at all to do with the damage," *id.* at 561, and that if "they are leaning to the south, they were built that

way," *id.* at 566.  He conceded on cross-examination, however, that he did not see any significant damage associated with wind, and that the blasting shook the McDonalds' residence with such force that it knocked pictures off the walls.

At the close of the evidence, Farrell Cooper again requested judgment as a matter of law.  Additionally, North American sought "to proceed on the theory of ultra hazardous activity" instead of negligence, and requested a corresponding jury instruction.  *Id.* at 591.  The district court denied both motions, ruling that North American had presented sufficient evidence to take the case to the jury, but that the jury would be instructed only on negligence because North American had failed to plead an ultrahazardous-activity theory.

The jury returned a verdict in favor of North American for $170,000, which was the amount North American had paid for the damage to the poultry houses. Farrell Cooper then filed a renewed motion for judgment as a matter of law, arguing that (1) there was no evidence of the poultry houses' fair market value; (2) there was no evidence of the standard of care for a blast-mining operation or of any breach of that standard; and (3) there was insufficient evidence that blasting had caused the damage.  The district court denied the motion, and Farrell Cooper appealed.

## DISCUSSION

### I. Standards of Review

"We review the district court's denial of judgment as a matter of law de novo, using the same standard employed by the district court." *Crumpacker v. Kansas, Dep't of Human Res.* 474 F.3d 747, 751 (10th Cir. 2007). "A party is entitled to judgment as a matter of law only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position." *EEOC v. Heartway Corp.*, 466 F.3d 1156, 1160 (10th Cir. 2006). In conducting our review, "we will not weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury." *Id.* at 1161.

Because this is a diversity case, the substantive law of the forum state, Oklahoma, governs. *Clark v. State Farm Mut. Auto. Ins. Co.*, 433 F.3d 703, 709 (10th Cir. 2005).

### II. Fair Market Value

In Oklahoma, "the measure of damages for the permanent injury to real property is the difference between the fair market value of the real property immediately prior to the injury, and the fair market value thereof immediately after such injury." *Stekoll v. Prevett*, 359 P.2d 579, 580-81 (Okla. 1961); *see also Schneberger v. Apache Corp.*, 890 P.2d 847, 849 (Okla. 1994). Farrell Cooper contends that "[t]here was no evidence of fair market value, and therefore, there was no competent evidence on which to base any kind of damage award." Aplt.

Br. at 15. But Mr. McDonald testified that the $80,000 and $90,000 "property values" set by the insurance agent on the two poultry houses were "a fair deal," Aplt. App., Vol. 2 at 294, and that if he had thought the values were different, he would have sought different insurance coverage, *id.* at 296. Mr. McDonald further testified that those values applied up until Farrell Cooper's blasting, *id.*, and that afterward, the poultry houses were leaning so badly that they were not safe to enter, *id.* at 363. There was also testimony by Mr. McDonald that he had offered to sell the entire farm before blasting for $695,000, a figure suggested by a real estate appraiser. *Id.* at 366. We conclude that this evidence was sufficient for the jury to infer that the poultry houses' fair market value before blasting was $170,000, and that afterward their value was zero. *See H.D. Youngman Contractor, Inc. v. Girdner*, 262 P.2d 693, 696 (Okla. 1953) ("It is generally recognized that the opinion testimony of the owner of property, because of his relationship as owner, is competent and admissible on the question of the value of such property, regardless of his knowledge of property values.").

That Mr. McDonald may have expressed uncertainty when cross-examined in terms of "replacement cost" value and "fair market value," Aplt. Br. at 9,[1] is not enough for us to discard the jury's verdict, as we do not weigh evidence when reviewing a motion for judgment as a matter of law, *Heartway Corp.*, 466 F.3d at

_____

[1]     Farrell Cooper's appendix omits the transcript pages cited in support of its uncertainty argument.

1160.  Indeed, this rule has particular relevance here, as we have no way of resolving the conflict between Farrell Cooper's cross-examination of Mr. McDonald, which purportedly elicited $170,000 as the cost to "replace[ ]" the poultry houses, and Farrell Cooper's stipulation that the cost to "rebuild" the poultry houses exceeded $275,000.

In short, "[i]t was within the jury's province to determine the value of the [poultry houses]." *Cleveland v. Dyn-A-Mite Pest Control, Inc.*, 57 P.3d 119, 130 (Okla. Civ. App. 2002).

### III.  Standard of Care/Breach

Farrell Cooper next argues that there was no "evidence as to the standard of care required for a blasting operation," and therefore, the jury had no "basis upon which to determine whether [Farrell Cooper] breached its standard of care to the McDonalds." Aplt. Br. at 15.  But standard of care and breach are elements of negligence, *see Johnson v. Hillcrest Health Ctr., Inc.*, 70 P.3d 811, 816, 817 (Okla. 2003), and are not required to prove strict liability for ultrahazardous conduct, *see Wetsel v. Ind. Sch. Dist. I-1*, 670 P.2d 986, 990 (Okla. 1983).  The Oklahoma Supreme Court has unambiguously held since 1957 that a plaintiff need not "allege and prove negligence on the part of defendant before plaintiff can recover property damage caused by blasting." *Smith v. Yoho*, 324 P.2d 531, 533 (Okla. 1958) (citing *Seismograph Serv. Corp. v. Buchanan*, 316 P.2d 185 (Okla. 1957)).  "[T]he liability of a user of explosives is absolute and not

-8-

predicated on the user's negligence." *Id.*; *see also Superior Oil Co. v. King*, 324 P.2d 847, 848 (Okla. 1958) (observing that "[s]ince . . . *Seismograph Service* . . . it is immaterial whether there was negligence," and approving a jury instruction imposing liability "without regard to the degree of care employed in discharging the blast"); *Ward v. H. B. Zachry Const. Co.*, 570 F.2d 892, 895-96 (10th Cir. 1978) (collecting cases and observing that Oklahoma law on the use of explosives "impos[es] liability without regard to negligence"). All that the plaintiff need prove is that the property was damaged directly and proximately by explosion. *States Exploration Co. v. Reynolds*, 344 P.2d 275, 278 (Okla. 1959).

While North American seeks to uphold the judgment under negligence principles, "[w]e may affirm on any ground adequately presented to the district court." *Griffith v. Colo., Div. of Youth Servs.*, 17 F.3d 1323, 1328 (10th Cir. 1994) (citations omitted). Before trial, North American identified the "theory of ultrahazardous activity" in the pretrial order as a triable issue, Aplt. App., Vol. 1 at 80, and during trial North American sought to proceed under that theory instead of negligence and to have the jury so instructed, *id.*, Vol. 2 at 591. Further, contrary to the district court's ruling, North American's third-party complaint can be read as asserting an ultrahazardous-activity theory, notwithstanding the complaint's one isolated reference to "negligence." *See* 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1216, at 227 (3d ed. 2004) (stating that a pleading must contain allegations from which to infer that evidence

-9-

exists on the "material point[s] necessary to sustain a recovery on any recognizable legal theory, even though that theory may not be the one suggested or intended by the pleader"). Because the theory of ultrahazardous activity was presented to the district court—indeed, it was the only theory under Oklahoma law that applied—we conclude that any failure by North American to proffer evidence of the standard of care for blasting or of breach was irrelevant to the judgment, and therefore harmless. *See* Fed. R. Civ. P. 61.

## IV. Causation

Farrell Cooper claims that "Mr. Lawrence offered no explanation for how [its] blasting damaged the McDonalds' poultry houses." Aplt. Br. at 25. But in doing so, it ignores Mr. Lawrence's testimony that the cause was "blast induced forces," Aplt. App., Vol. 2 at 405, "air blast" from "heavy blasting going on within a hundred and fifty feet, [or] two hundred [feet]" of the poultry houses, *id.* at 409, or "blast induced vibrations in conjunction with the air blasts from the explosions," *id.* at 435.

Farrell Cooper also argues that Lawrence was not qualified to offer expert testimony on whether blasting damaged the poultry houses. But instead of discussing his qualifications or the lack thereof, *see* Fed. R. Evid. 702, and whether his testimony had "'a reliable basis in the knowledge and experience of [the relevant] discipline,'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993)),

-10-

Farrell Cooper simply directs our attention to Mr. Lawrence's testimony on cross-examination that (1) he could neither quantify the "air blast force" that impacted the poultry houses nor state that the force exceeded "a twenty or thirty mile an hour wind"; and (2) he could not rule out that a seventy-three mile an hour wind reported by the weather service had caused the poultry houses to lean. Aplt. App., Vol. 2 at 422-23. Mr. Lawrence's admissions during cross-examination only go to the weight of his opinion about the cause of property damage, and have no bearing on the admissibility of his opinion. *See Goebel v. Denver and Rio Grande Western R.R. Co.*, 346 F.3d 987, 998-99 (10th Cir. 2003) (indicating that an expert's failure to rule out all possible alternative causal sources does not render the expert's testimony inadmissible); *Compton v. Subaru of Am., Inc.*, 82 F.3d 1513, 1518 (10th Cir. 1996) (stating that if there is a logical basis for an expert's opinion, the weaknesses in the underpinnings of the opinion go to the weight and not the admissibility of the testimony), *overruled on other grounds by Kumho Tire Co.*, 526 U.S. at 147, 149; *accord SR Int'l Bus. Ins. Co., Ltd. v. World Trade Ctr. Props., LLC*, 467 F.3d 107, 134 (2d Cir. 2006) (stating that gaps or inconsistencies in an expert's testimony concern the weight of the evidence and not its admissibility); *TFWS, Inc. v. Schaefer*, 325 F.3d 234, 240 (4th Cir. 2003) (classifying as a challenge to weight, rather than admissibility, the argument that an expert's calculations did not support the expert's conclusion); *see also Daubert*, 509 U.S. at 596

("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Even if we were to somehow conclude that the admission of Mr. Lawrence's testimony was an abuse of the district court's discretion, *see Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1079 (10th Cir. 2006), there was ample independent evidence of causation. For instance, Mr. McDonald testified that he did not notice the poultry houses leaning until after Farrell Cooper's blasting. Similarly, insurance agent Pitchford testified that after the blasting, the walls were leaning away from the blast cite. And both the WIS report and the Britt/Paulk report indicate that there was no leaning before the blasting. Moreover, Farrell Cooper's own expert acknowledged that the blasting shook the McDonald residence, which was over twice the distance from the blasting than the poultry houses, and that he did not see any significant damage to the poultry houses that he would attribute to the wind. Finally, the evidence showed that there were roughly forty-five actual blasts within two to three hundred feet of the poultry houses, using a total of 1,300 tons of ammonium nitrate.

This evidence of causation is arguably more than the evidence found sufficient by the Oklahoma Supreme Court in *Superior Oil Co.* There, the causal link between the defendant's use of explosives and the damage to the plaintiff's

well was shown by (1) the plaintiff's testimony that the "shot fired" shook his residence, rattling windows and dishes, and that the well was practically dry the next morning; and (2) another witness's testimony that when the shot was fired he was five or six hundred yards away from the firing point, he heard the explosion, saw dirt fly, and felt the shock or vibration, and that after the explosion he saw a crack in the well. 324 P.2d at 848.

While Farrell Cooper provided trial testimony that its blasting may not have caused the damage to the poultry houses, it has not demonstrated on appeal that the other causation evidence given to the jury "points [its] way and is susceptible to no reasonable inferences which may support [North American]." *Heartway Corp.*, 466 F.3d at 1160.

The judgment of the district court is AFFIRMED.

Entered for the Court

Michael R. Murphy
Circuit Judge